WOODINGTON v SHOKOOHI

Docket No. 288923. Submitted March 2, 2010, at Lansing. Decided May 4, 2010, at 9:05 a.m.

Cheri L. Woodington brought an action in the Saginaw Circuit Court seeking a judgment of divorce from Kamran Shokoohi. The trial court, Robert L. Kaczmarek, J., entered a judgment of divorce. Plaintiff appealed and defendant cross-appealed.

The Court of Appeals *held*:

1. The trial court failed to provide its analysis or reasoning regarding its decisions to award plaintiff alimony in gross and deny plaintiff's request for spousal support, therefore the Court of Appeals must reverse and remand to the trial court with instructions to make findings of fact appropriate for judicial review.

2. The trial court's determination that the real property that defendant purchased on Sawmill Creek was not a marital asset was not clearly erroneous and must be affirmed.

3. The trial court abused its discretion by denying plaintiff's discovery request for the production of the business records of the professional corporation that employs defendant. The matter must be remanded to the trial court to enable plaintiff to examine the records sought in the subpoena. After examining the records subject to an appropriate protective order, plaintiff may move for appropriate relief on the basis of information in the records that could lead to a different outcome in regard to the determination concerning defendant's interest in the professional corporation as a marital asset.

4. The trial court failed to make relevant findings of fact regarding the value of certain disputed items of marital property. This precludes meaningful review of whether the trial court's findings were clearly erroneous and whether its division of property constituted an abuse of discretion. The trial court failed to make findings regarding a 2007 GMC Yukon, a Saginaw Federal Credit Union account and a Chase Bank account, defendant's 401(k) account with the professional corporation, and a Mercedes vehicle. The trial court did not fail to make relevant findings regarding a Chemical Bank primevest account and did not clearly

err in holding that the account was not a marital asset and belonged primarily to defendant's sister. The trial court's failures to make findings regarding the relevant factors for dividing property and to assign a value to several assets or determine the appropriate date for valuation prevents the Court of Appeals from determining if the marital division was equitable. The matter must be remanded to the trial court for adequate findings of fact.

5. The trial court failed to explain its decision to award plaintiff less than half of the amount of attorney fees she requested, therefore, there is no basis for determining whether the award represented an abuse of discretion. The error was not harmless. The matter must be remanded to the trial court for appropriate findings.

6. There is no merit to defendant's argument that the trial court properly denied plaintiff's request for an expert witness fee because the court gave no credence to the expert's opinion. No authority was presented to support the argument that an award of costs for an expert's fee is in any way to be tied to the party's success regarding the matter on which the expert testified.

7. The prenuptial agreement of the parties is ambiguous. The phrase "the parties specifically agree and state that this Agreement is intended to waive rights upon death and is not made in contemplation of any divorce" does not unambiguously disclaim application of the agreement in the event of a divorce. At least two interpretations of the agreement are possible: (1) the prenuptial agreement was not intended to govern the division of assets in a divorce; and (2) the agreement should govern, or at least guide, the division of assets in a divorce if such provisions are legally enforceable. The matter must be remanded to the trial court to resolve the ambiguity. On remand, if the trial court determines that the parties intended for the agreement to govern division of property in a divorce, it should further consider the meaning of the term "contribution" as used in the agreement in reference to assets acquired during the marriage. The trial court may also address plaintiff's arguments that the prenuptial agreement should be set aside on the basis of changed circumstances.

8. The judgment must be affirmed as it pertains to the Sawmill Creek property and the Chemical Bank primevest account. The case must be remanded to the trial court for further findings and proceedings regarding the decision to award plaintiff alimony in gross in lieu of spousal support, discovery of the business records of defendant's employer, the trial court's overall division of prop-

erty and the valuation of certain specific assets, the award of attorney fees to plaintiff, and the interpretation of the prenuptial agreement with respect to divorce.

Affirmed in part, reversed in part, and remanded.

*Braun Kendrick Finkbeiner P.L.C.* (by *Jamie Hecht Nisidis*) for plaintiff.

*Skinner Professional Law Corporation* (by *David R. Skinner*) for defendant.

Before: K. F. KELLY, P.J., and SAAD and WHITBECK, JJ.

SAAD, J. Plaintiff, Cheri Woodington, appeals the trial court's judgment of divorce. She argues that the trial court made inadequate findings of fact in regard to the value of marital property, the date of valuation, and the status of certain assets as marital or separate property. She also raises issues concerning discovery, spousal support, and attorney fees. Defendant, Kamran Shokoohi, cross-appeals and contends that the trial court erred by failing to divide the property in accordance with the parties' prenuptial agreement. We affirm some aspects of the trial court's judgment; however, because the inadequacy of the trial court's findings on several of these matters precludes meaningful appellate review, we remand for further proceedings.

I. SPOUSAL SUPPORT

Plaintiff argues that the trial court erred by awarding her alimony in gross in lieu of the spousal support she sought. She also contends that the trial court failed to make findings of fact in support of this decision. We find that the trial court's failure to make relevant findings precludes review of this decision, and we remand to the trial court for further findings.

This Court reviews a trial court's award of spousal support for an abuse of discretion. *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court's findings of fact relating to an award of spousal support are reviewed for clear error. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000).

" 'In deciding a divorce action, the circuit court must make findings of fact and dispositional rulings.' " *McDougal v McDougal*, 451 Mich 80, 87; 545 NW2d 357 (1996) (citations omitted). This Court must first review the trial court's findings of fact. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). Findings of fact, such as a trial court's valuation of particular marital assets, will not be reversed unless clearly erroneous. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. *Id.*; *Johnson v Johnson*, 276 Mich App 1, 10-11; 739 NW2d 877 (2007). Special deference is given to the trial court's findings when they are based on the credibility of the witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). The determination of the proper time for valuation of an asset is in the trial court's discretion. *Gates v Gates*, 256 Mich App 420, 427; 664 NW2d 231 (2003). If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. *Sparks*, 440 Mich at 151-152. "The court's dispositional ruling should be affirmed unless this Court is left with the firm

conviction that the division was inequitable." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005).

Plaintiff sought spousal support in the amount of $55,000 annually (rounded to $4,600 monthly) payable until the parties' youngest child began attending high school, which would enable plaintiff to continue her status as a full-time, stay-at-home mom until the children completed middle school. Defendant stated in his trial brief that he would be willing to pay spousal support in the amount of $55,000 per year for two years.

The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case. *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. *Id.* at 726-727.

Plaintiff says that the trial court abused its discretion because it essentially denied her spousal support, and opted instead to award her alimony in gross, "a

division of property."[1] The trial court did not explain its reasons for awarding alimony in gross, its reasons for awarding the specific amount of alimony in gross, or its reasons for denying plaintiff's request for periodic spousal support subject to modification under MCL 552.28. Accordingly, we are unable to discern why the court believed that this decision was appropriate for the parties' circumstances. The trial court could have ordered spousal support or an award of property called "alimony in gross" but, to support its dispositional ruling, the court was required to make findings of fact that are susceptible to appellate review. Because the trial court failed to provide its analysis or reasoning regarding its decision to award alimony in gross and deny plaintiff's request for spousal support, we must reverse and remand with instructions that the trial court make findings of fact appropriate for judicial review.

## II. SAWMILL CREEK PROPERTY

Plaintiff maintains that the trial court erred by finding that the real property defendant purchased on Sawmill Creek was not a marital asset. We disagree.

We review for clear error a trial court's findings of fact regarding whether a particular asset qualifies as marital or separate property. See *McNamara v Horner*, 249 Mich App 177, 182-183; 642 NW2d 385 (2002). Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *Ackerman v Ackerman*, 197

---

[1] *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). We note that the holding in *Staple* is inapplicable because *Staple* applies "to judgments entered pursuant to the parties' own negotiated settlement agreements, not to alimony provisions of a judgment entered after an adjudication on the merits." *Id.* at 569.

Mich App 300, 302; 495 NW2d 173 (1992). We accord special deference to a trial court's factual findings that were based on witness credibility. *Draggoo*, 223 Mich App at 429.

A "trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets." *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). Marital assets are those that came "to either party by reason of the marriage . . . ." MCL 552.19. Generally, marital assets are subject to being divided between the parties, but separate assets may not be invaded. *McNamara*, 249 Mich App at 183.

Plaintiff presented evidence that the Sawmill Creek property was a marital asset acquired by defendant before she filed for divorce, but defendant presented evidence that he bought the property for and on behalf of his sister, with his sister's money. This issue presented a question of the credibility of the witnesses. Although the trial court might have found that defendant's explanation of his involvement in the Sawmill Creek property purchase was not credible, and that he was concealing the property's true status as a marital asset, it gave credence to his explanation. This finding was not clearly erroneous because it was based on the trial court's findings as to the credibility of witnesses. *Draggoo*, 223 Mich App at 429.

### III. DISCOVERY OF BUSINESS RECORDS

Plaintiff argues that the trial court erred by denying her discovery request for production of the business records of the Great Lakes Eye Institute, P.C. (the P.C.). A trial court's decisions regarding discovery are reviewed for abuse of discretion. *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50; 555 NW2d

871 (1996). In view of the unique circumstances of defendant's relationship to the P.C., we conclude that the trial court abused its discretion by denying the discovery request.

After completing his residency in ophthalmology, defendant practiced medicine with the Great Lakes Eye Institute, P.C., a professional corporation owned by his brother, Farhad Shokoohi. Defendant was allegedly employed pursuant to an employment agreement, but his compensation up to and including 2005 was substantially higher than the amount due under the agreement. In 2006, the year plaintiff filed for divorce, defendant's compensation was reduced to the contractual payment amount. Plaintiff maintained that defendant was a part owner of the P.C., although corporate documents listed Farhad as the sole owner. She sought discovery of the P.C.'s business records to investigate the true nature of defendant's relationship with the P.C., and the method by which his compensation was determined. The trial court reviewed the records in camera and denied the request.

The issue, as framed by plaintiff, is not whether the trial court erred by finding that defendant had no ownership interest in the P.C., but whether the trial court erred by denying plaintiff the discovery materials she says are necessary to assess defendant's status in relation to the P.C. The trial court's comments that the materials were not discoverable because they did not contain information concerning defendant's income reflect a misunderstanding of plaintiff's purpose in seeking the documents. Plaintiff sought the documents to assess whether defendant's compensation was formulaically correlated to the P.C.'s receipts (suggesting an ownership interest), rather than calculated only according to the employment agreement. Plaintiff established

suspicious circumstances warranting further investigation of how defendant's compensation was determined. Defendant's actual compensation from 2000 to 2005 was substantially disparate from the compensation he should have earned under the employment agreement, but in 2006, the year plaintiff filed for divorce, it was reduced to the employment agreement amount. Moreover, although defendant claims that he is and always has been only an employee of the P.C., evidence shows that he bragged to others that he had an ownership interest and corporate documents show that defendant was listed as an officer of the P.C. These circumstances raise questions as to why defendant was paid more than the amount due under the employment agreement, and why the end of the overpayment coincided with the onset of the divorce action. Defendant's self-serving explanation—that his brother paid him generously out of fraternal affection until 2006—does not dispel questions as to Farhad's actual arrangement with regard to defendant's compensation. Additionally, Farhad's conflicting statements regarding defendant's status as a corporate officer merit further discovery to determine whether defendant held any position other than that of a salaried physician. Plaintiff should have been allowed the opportunity to examine the documents to investigate the actual nature of defendant's status with the P.C. The suspicious circumstances surrounding defendant's compensation militate against accepting at face value defendant's assertion that his additional compensation was a decision based on familial favoritism.

Defendant argues that plaintiff's expert, Robert Selley, essentially conceded the ownership issue by stating that ownership status did not enter into his analysis. The pertinent question, however, is whether the financial records contained information that might have enabled Selley to better assess whether defendant

had an ownership interest, and whether that information could have led to a different or stronger analysis.

In *Eyde v Eyde,* 172 Mich App 49; 431 NW2d 459 (1988), the defendant wife, Kathleen Eyde, sought business records from George Eyde, the brother and business partner of her husband, Louis Eyde, in the course of divorce proceedings to determine her husband's net worth. George Eyde brought an action to prevent discovery of the documents. The trial court entered an order compelling discovery but establishing a number of safeguards designed to prevent the disclosure of confidential matters and to prevent discovery of documents that relate only to George Eyde and were not relevant to Kathleen Eyde's determination of Louis Eyde's net worth. *Id.* at 50. The Court stated:

> Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice. *Daniels v Allen Industries, Inc,* 391 Mich 398, 403; 216 NW2d 762 (1974). Discovery rules are to be liberally construed in order to further the ends of justice. *Id.* The modern tendency is to broaden the scope of discovery when necessary to facilitate preparation, to guard against surprise, and to expedite justice. *Fassihi v St Mary Hospital of Livonia,* 121 Mich App 11, 15; 328 NW2d 132 (1982).
>
> The general rule is that any document which is relevant and not privileged is freely discoverable upon request. *Davis [v O'Brien,* 152 Mich App 495, 502-504; 393 NW2d 914 (1986)]. MCR 2.302(B)(1) provides:
>
>> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."
>
> There is no requirement that there be good cause for discovery of relevant and nonprivileged documents. *Davis, supra* at 503-504. [*Eyde,* 172 Mich App at 54-55.]

The Court concluded that the defendant wife was entitled to discover Louis Eyde's records. It stated:

> Louis Eyde's business records and banking records were relevant to the subject matter involved in defendant's divorce action. The financial status of defendant's husband is material and relevant to the subject matter of defendant's divorce. . . . Defendant's discovery so far has been inadequate to determine the true value of Louis Eyde's assets; financial statements now in defendant's possession vary widely in their estimate of Louis Eyde's net worth. The documents already in defendant's possession do not include relevant financial information regarding all of Louis Eyde's known business entities. Plaintiff's counsel had effectively blocked any estimate of Louis Eyde's net worth by deposed bank officials. Thus, the documents at issue are relevant and necessary to determine the extent and value of defendant and Louis Eyde's marital estate. [*Id.* at 55.]

Although not directly on point, *Eyde* is instructive with respect to discovery of financial records that are relevant to ascertaining the value of a spouse's assets, but which are in the possession of a closely related third party. In *Eyde*, it was already established that George Eyde and Louis Eyde were partners in several business endeavors, and that the records regarding the endeavors in which Louis was involved were relevant to the determination of Louis's financial status. In the instant case, in contrast, defendant's status in relation to the P.C. is uncertain. The corporate documents indicate that Farhad is the sole shareholder, and defendant's tax returns indicate that he is an employee without an ownership interest, but plaintiff has presented evidence of an inconsistency between these "official" facts and defendant's actual compensation. Under these specific circumstances, plaintiff has established that discovery of the P.C.'s records is relevant to the subject matter, and the records are therefore discoverable.

In granting the P.C.'s motion to quash, the trial court stated that the records were not relevant to proving

defendant's income. We agree with plaintiff that this ruling was off-point. Plaintiff needed the records to investigate the P.C.'s basis for determining defendant's income, and to investigate whether this method reflected any understanding between Farhad and defendant concerning possible ownership status. Such information would have been highly relevant to Selley's analysis of the value of defendant's "holder's interest" in his practice.

Plaintiff has offered concrete, specific reasons why the P.C.'s records might reveal pertinent information concerning defendant's interest in the P.C. Accordingly, we remand to the trial court to enable plaintiff to examine the records sought in the subpoena. After examining the records subject to an appropriate protective order, plaintiff may move for appropriate relief on the basis of information in the records that could lead to a different outcome in regard to defendant's interest in the P.C. as a marital asset.

### IV. TRIAL COURT'S FINDINGS OF VALUE OF DISPUTED ASSETS

Absent a prenuptial agreement, a trial court should equitably distribute marital property in light of all the circumstances. *Berger*, 277 Mich App at 716-717. To reach an equitable division of marital property, a trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. *McDougal*, 451 Mich at 89; *Sparks*, 440 Mich at 158-160. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. The trial court must make specific

findings regarding the factors it determines to be relevant. *Sparks*, 440 Mich at 159; *Berger*, 277 Mich App at 717.

Generally, marital assets are subject to division between the parties but the parties' separate assets may not be invaded. *McNamara*, 249 Mich App at 183. Generally, assets earned by a spouse during the marriage, whether they are received during the existence of the marriage or after the judgment of divorce, are properly considered part of the marital estate. *Skelly v Skelly*, 286 Mich App 578, 582; 780 NW2d 368 (2009); *McNamara*, 249 Mich App 183-184. The parties' manifestation of intent to lead separate lives, such as by filing a complaint for divorce or maintaining separate homes, can be of crucial significance when apportioning the marital estate. *Byington v Byington*, 224 Mich App 103, 112; 568 NW2d 141 (1997). However, property earned after such a manifestation of intent should still be considered a marital asset, although the presumption of congruence that exists with respect to the distribution of marital assets becomes attenuated and may result in the nonacquiring spouse being entitled to no share or a lesser share of the property in light of all the apportionment factors. *Id.* at 115-116. Separate assets may be invaded if one party demonstrates additional need, or had significantly contributed to the acquisition or growth of the separate asset. *Skelly*, 286 Mich App at 582.

A trial court must make specific findings of fact regarding the value of each disputed piece of marital property awarded to each party in the judgment. *Olson*, 256 Mich App at 627-628. A trial court's findings of fact are inadequate if they are not sufficiently specific to enable the parties to determine the approximate values of their individual awards by consulting the verdict

along with the valuations to which they stipulated. *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993). For the purposes of dividing property, marital assets are typically valued at the time of trial or the time judgment is entered, although a court may, in its discretion, use a different date. *Byington*, 224 Mich App at 114 n 4.

This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, *Sparks*, 440 Mich at 151-152, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable. *Pickering*, 268 Mich App at 7. When dividing marital property, a court is not required to award mathematically precise shares. *Byington*, 224 Mich App at 114-115.

Here, the trial court did not divide the marital estate on a percentage basis, nor did it explain its general basis for determining an equitable division of property. It did not make findings regarding the parties' contributions to the marital estate or other relevant factors for dividing property. The trial court awarded defendant the bulk of the marital estate, and awarded plaintiff personal possessions, such as her vehicle, and the children's furniture, and awarded plaintiff one of the parties' homes and a property award in the form of alimony in gross. Plaintiff specifically challenges the trial court's failure to make findings concerning the value of certain assets, and generally challenges the trial court's failure to make findings concerning its overall property division.

We are unable to discern the trial court's general plan in dividing assets. Defendant argues that the division can be explained in reference to the prenuptial agreement, but the trial court determined that the

parties did not make the agreement in contemplation of divorce. (Defendant's argument that the trial court erred in failing to comply with the prenuptial agreement is addressed later in this opinion.) Despite this determination by the trial court, the trial court's division of property was substantially consistent with the prenuptial agreement's requirement that property acquired after the marriage "shall be divided . . . according to the percentage of their respective contributions in acquiring same." It appears that the trial court regarded the marital assets as the product of defendant's contributions and awarded them accordingly, allowing plaintiff only six years of support payments and assets such as the vacation home and a vehicle that could be considered "her" own property. The trial court's failure to make findings in support of its uneven property division raises questions regarding why it ordered a property division in near compliance with a prenuptial agreement that it found to be inapplicable. Furthermore, it appears that the trial court's decision may have been based on the unstated premise that defendant was the primary contributor to the marital estate. Although plaintiff's financial contributions to the marital estate are negligible, it is well established that a non-wage-earning spouse can make substantial contributions to the marital estate by running the household and caring for the parties' children. *Hanaway v Hanaway*, 208 Mich App 278, 293; 527 NW2d 792 (1995). Plaintiff, a lawyer, quit her law practice and suspended her legal career to stay at home with the parties' children. She also testified that she devoted substantial energy and time to serving the needs of defendant and his family. The trial court's failure to make relevant findings on this matter precludes meaningful review of whether the trial court's findings were

clearly erroneous, and of whether its division of property constituted an abuse of discretion.

Additionally, we agree with plaintiff that the trial court failed to make findings regarding the following assets:

*2007 GMC Yukon.* The parties gave conflicting testimony concerning the value of this vehicle, but the trial court failed to make a finding regarding its value, and failed to explain if or why it considered the vehicle plaintiff's separate property.

*Saginaw Federal Credit Union account and Chase Bank account, No. \*\*\*\*0175.* Defendant withdrew $100,000 from the credit union account in June 2006, the month plaintiff filed for divorce, and deposited this amount into the Chase account. Defendant did not account for how these funds were disseminated after their transfer to the Chase account. In December 2007, defendant deposited his employee bonus, in the amount of $148,875, into the credit union account. The trial court awarded both of these accounts to defendant, without making relevant findings. Given the questionable circumstances of money being withdrawn from the parties' joint account at the time plaintiff filed for divorce, and being transferred to another account that was nearly depleted over the following months, the trial court erred by failing to make findings as to the value of these accounts. The trial court's decision in regard to these accounts is problematic because there are no findings of fact that support the trial court's decision. The court made no findings as to the parties' contributions, and so forth, that would explain why the award is so favorable to defendant. The court's decision appears to conform to the prenuptial agreement, but the court found that the agreement was not made in contemplation of divorce. The trial court's decision to award these

accounts to defendant without making findings regarding the transactions seems to assume that defendant was entitled to dissipate the $100,000 transferred out of the credit union without explanation, and that he was entitled to keep as his separate property the 2007 bonus payment of $148,875. Property acquired after the parties manifest an intent to lead separate lives is not necessarily excluded from the marital estate. The court should consider this matter pursuant to relevant factors, such as the parties' respective contributions to the spouse's compensation package. *Byington*, 224 Mich App at 117. Regarding the credit union withdrawal, when a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate. 2 Michigan Family Law (6th ed, 2008 supp), Property Division, § 15.21. But the trial court made no findings to explain its decisions regarding these accounts, or its overall plan for dividing the marital estate.

*Defendant's 401(k) account with the P.C.* The trial court's minimal findings of fact concerning the marital estate in general, and several specific assets, including this account, leave us unable to determine whether its decisions were an abuse of discretion, or whether they were based on clearly erroneous findings of fact.

*Mercedes.* Defendant argues that the Mercedes is not marital property because he acquired it through a "reinvestment" of an asset listed as a separate asset in the prenuptial agreement; plaintiff rejects this characterization. The trial court failed to make findings regarding the value of the Mercedes and its status as marital property.

We do not, however, share plaintiff's view that the trial court failed to make relevant findings regarding the Chemical Bank primevest account. Defendant held

this account jointly with his sister. The trial court awarded defendant "the value of potential interest should sister predecease Defendant." This statement indicates that the trial court found that the account belonged primarily to defendant's sister, and was not a marital asset. This finding is not clearly erroneous because it is supported by defendant's testimony, which the trial court was free to find credible.

Notwithstanding the Chemical Bank account, we conclude that the trial court's failure to make findings as to the relevant factors for dividing property, and its failure to assign a value to several assets (or to determine the appropriate date for valuation), leave this Court and the parties unable to assess whether the marital division was equitable. This problem is further complicated by the trial court's issuance of a property division that is substantially compliant with a prenuptial agreement that the trial court found was not made in contemplation of divorce. Consequently, we remand the case to the trial court for adequate findings of fact.

## V. COSTS AND ATTORNEY FEES

Plaintiff argues that the trial court erred by awarding her only a fraction of the costs and attorney fees she sought. This Court reviews a trial court's decision to award attorney fees in a divorce action for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). The findings of fact on which the trial court bases its decision are reviewed for clear error. *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007).

A court in a divorce action may award attorney fees to enable a party to carry on or defend the action. MCR 3.206(C)(1); *Stallworth*, 275 Mich App at 288-289. MCR 3.206(C)(1) provides that a party to a divorce action

may request the trial court to order the other party to pay all or part of the party's attorney fees. The party seeking attorney fees must allege facts sufficient to show either that the party is unable to bear the expense of the action, and that the other party is able to pay, MCR 3.206(C)(2)(a), or that the attorney fees were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, MCR 3.206(C)(2)(b). The party requesting the attorney fees has the burden of showing facts sufficient to justify the award. *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

Attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit. *Gates*, 256 Mich App at 438-439. It is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support. *Id.* The property division and the award of attorney fees " 'function in tandem,' " and a party may be ordered to pay the opposing party's attorney fees if the opposing party was awarded insufficient liquid assets in the property division to pay the fees and costs. *Olson*, 273 Mich App at 354 n 6. In *Kosch v Kosch*, 233 Mich App 346, 354; 592 NW2d 434 (1999), a wife who received $1.2 million in marital assets could not show that she was unable to bear the expense of the divorce action; consequently, this Court concluded that she was not entitled to attorney fees. However, in *Ozdaglar v Ozdaglar*, 126 Mich App 468, 473; 337 NW2d 361 (1983), this Court held that the plaintiff wife, who was still unemployed, was entitled to attorney fees, notwithstanding her substantial property award, on the ground that she should not be required to pay attorney fees from her share of the marital estate, which she needed to support herself.

Plaintiff submitted a certification of plaintiff's counsel fees and costs to the trial court on June 6, 2008. Plaintiff retained George Snyder of Meyer, Kirk, Snyder & Lynch, PLLC, from Bloomfield Hills, and Timothy Fryhoff of Fryhoff & Lynch, PLLC, from Bloomfield Hills, as well as Christopher Picard of Burkhart, Picard, Tiderington & McLeod, PLLC, from Saginaw, to represent her in the action. Plaintiff submitted billing documentation that purportedly adjusts the Detroit-area attorneys' fees to the prevailing rates for legal services in the Saginaw area, and that also adjusted the fees to eliminate charges for duplicate services. She requested a total of $80,226.11, plus $16,400 for reimbursement of Selley's expert fee. Defendant fails to acknowledge this submission, and argues that plaintiff failed to submit any documentation in support of her request. He also argues that plaintiff was required to present proof of attorney fees in the course of trial, notwithstanding MCR 3.206(C)(1), which provides that a party "may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding."

The trial court failed to explain its decision to award plaintiff only $25,000, less than half of the amount requested. Without adequate findings of fact, there is no basis for determining whether the trial court's award represented an abuse of discretion. Under the circumstances, the error is not harmless. Although defendant questions plaintiff's need for three attorneys, including two from out-of-town, it is not obvious that the fees were unreasonable after they were adjusted for local rates and to eliminate redundancy. Moreover, plaintiff did not receive any liquid assets other than the payment of alimony-in-gross over a six-year period. Plaintiff will presumably need to use these funds for living expenses,

including a home in the Saginaw area. This circumstance raises the question whether plaintiff must invade assets that she needs for living expenses in order to pay her attorney fees. *Ozdaglar*, 126 Mich App at 473. Accordingly, the trial court should make appropriate findings in this regard on remand.

Defendant also argues that the trial court properly denied plaintiff's expert witness fee because the trial court gave no credence to Selley's opinion. We have found no authority for the principle that an award of costs to cover an expert's fee is in any way to be tied to the party's success regarding the matter on which the expert testified. The trial court's rejection of Selley's analysis does not necessarily mean that plaintiff retained him to advance, in defendant's words, "a totally bogus claim." Moreover, our ruling regarding plaintiff's right to discovery of the P.C.'s business records to establish defendant's interest in the P.C. undermines defendant's position regarding expert fees. Accordingly, this argument is without merit.

### VI. DEFENDANT'S CROSS-APPEAL: PRENUPTIAL AGREEMENT

On cross-appeal, defendant challenges the trial court's determination that the parties did not intend for the prenuptial agreement to apply to a divorce. A trial court's refusal to enforce a prenuptial agreement is reviewed for an abuse of discretion. *Rinvelt v Rinvelt*, 190 Mich App 372, 382; 475 NW2d 478 (1991).

Under Michigan law, trial courts recognize prenuptial agreements governing the division of property in the event of a divorce. *Reed*, 265 Mich App at 141-142. A court should never disregard a valid prenuptial agreement, but should instead enforce its clear and unambiguous terms as written. *Id.* at 144-145. See also MCL 557.28, providing that "[a] contract relating to property

made between persons in contemplation of marriage shall remain in full force after marriage takes place." However, "[a] prenuptial agreement may be voided (1) when obtained through fraud, duress, mistake, or misrepresentation or nondisclosure of material fact, (2) if it was unconscionable when executed, or (3) when the facts and circumstances are so changed since the agreement was executed that its enforcement would be unfair and unreasonable." *Reed*, 265 Mich App at 142-143. To determine if a prenuptial agreement is unenforceable because of a change in circumstances, the focus is on whether the changed circumstances were reasonably foreseeable either before or during the signing of the prenuptial agreement. *Id.* at 144. See also *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006), and *Rinvelt* 190 Mich App at 380, holding that an otherwise valid prenuptial agreement could be invalidated on the basis of the nondisclosure of a material fact, or if a change of circumstances since the execution of the agreement makes its enforcement unfair and unreasonable.

This issue raises questions of contract interpretation. Defendant asserts that the prenuptial agreement clearly and unambiguously provided for the division of property in the event of divorce, but he fails to address § 3.1, which states that "the parties specifically agree and state that this Agreement is intended to waive rights upon death and is not made in contemplation of any divorce." The trial court determined, on the basis of this language, that the agreement did not apply to divorce. The trial court did not address the remaining provisions of § 3, which provide for the division of property in a divorce, notwithstanding the disclaimer in § 3.1.

A contract must be interpreted according to its plain and ordinary meaning. *Holmes v Holmes*, 281 Mich App

575, 593; 760 NW2d 300 (2008). A contract is ambiguous if it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003); *Meagher v Wayne State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997). Under ordinary contract principles if contractual language is clear, construction of the contract is a question of law for the court. *Id.* at 721. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. *Id.* at 722. A court may not rewrite clear and unambiguous language under the guise of interpretation. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). Rather, courts must give "effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468.

Here, the prenuptial agreement is ambiguous. The phrase, "the parties specifically agree and state that this Agreement is intended to waive rights upon death and is not made in contemplation of any divorce," does not unambiguously disclaim application of the agreement in the case of divorce. Rather, it could be construed to mean that the contingency of divorce was not the purpose for which the parties entered into the agreement. The inclusion of several provisions for dividing property in the event of divorce militates against the interpretation that the parties intended for the agreement to apply only to dissolution of the marriage by death. Assuming, arguendo, that § 3.1 unambiguously disclaims application of the agreement in the event of divorce, the sections that follow § 3.1 create an irreconcilable conflict that renders the agreement ambiguous. *Klapp*, 468 Mich at 467. Disregarding these

provisions would violate the principle of giving a contract an interpretation that renders some part of the contract surplusage or nugatory. *Id.* at 468.

Moreover, § 3.7 creates multiple options depending upon the enforceability of prenuptial agreements intended to govern property divisions in the event of divorce. This section states as follows:

> Whether or not any section of Paragraph 3 of this Pre-Marital Agreement is valid or enforceable, the parties agree that this paragraph is severable from the balance of the Agreement and shall not effect the validity or enforceability of any other provision of this Agreement. *This Agreement may be introduced as evidence at the time of any divorce or separation proceedings for the court's consideration of the parties' intention at the time of their marriage.* [Emphasis added.]

This section both preserves the prenuptial agreement as an agreement in contemplation of death in the event that it is deemed unenforceable in regard to divorce, and preserves the agreement as evidence of the parties' intent in an action for divorce. Read in conjunction with § 3.1, the parties assert the following: (1) that the agreement was not made in contemplation of divorce; (2) that the agreement lays out a plan for dividing assets in a divorce; (3) that the plan for dividing assets in a divorce is severable from the agreement and would not invalidate the remainder of the agreement; and (4) if the plan for dividing assets in a divorce is not enforceable, it can serve as evidence of the parties' intent. At least two interpretations of this agreement are possible: (1) the prenuptial agreement was not intended to govern the division of assets in a divorce; and (2) the prenuptial agreement should govern, or at least guide, the division of assets in a divorce if such provisions are legally enforceable.

Plaintiff argues that the ambiguities of the agreement should be construed against defendant as the drafter of the agreement. This is an incorrect statement of the law: the rule of *contra proferentem*, i.e., that ambiguities are to be construed against the drafter of the contract, should only be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the finder of fact unable to determine what the parties intended their contract to mean. *Klapp*, 468 Mich at 470-471; *Smith v Smith*, 278 Mich App 198, 200 n 1; 748 NW2d 258 (2008).

We remand this case to the trial court to resolve the ambiguity in the prenuptial agreement. On remand, the trial court " 'must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning.' " *Klapp*, 468 Mich 469 (citation omitted). At trial, neither party presented extrinsic evidence regarding the meaning of the prenuptial agreement. The trial court may consider holding an evidentiary hearing on this matter if necessary to construe the prenuptial agreement. On remand, if the trial court determines that the parties intended for the contract to govern division of property in a divorce, it should further consider the meaning of the term "contribution" as used in the prenuptial agreement in reference to assets acquired during the marriage. It may also address plaintiff's arguments that the prenuptial agreement should be set aside on the basis of changed circumstances.

We affirm the trial court's judgment as it pertains to the Sawmill Creek property and the Chemical Bank primevest account. We remand to the court for further findings and proceedings regarding the following: the

decision to award plaintiff alimony in gross in lieu of spousal support; discovery of the P.C.'s business records; the trial court's overall division of property and the valuation of certain specific assets; the award of attorney fees to plaintiff; and the interpretation of the prenuptial agreement with respect to divorce. We do not retain jurisdiction.