*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF GRAND RAPIDS,

        Plaintiff-Appellee,

v

ARATH III, INC.,

        Defendant-Appellant,

and

CONSUMERS ENERGY COMPANY,

        Defendant.

UNPUBLISHED
September 17, 2020

No. 348479
Kent Circuit Court
LC No. 14-009558-CH

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Arath III, Inc., appeals as of right the trial court's order dismissing plaintiff's negligence claim, which came as a result of the trial court's order denying Arath's motion for allocation of costs. For the reasons discussed below, we reverse.

## I. BASIC FACTS

At issue in this case is the allocation of costs for the repair of a sidewalk and "areaway" near the Keeler Building in Grand Rapids. Grand Rapids Code, title IV, ch 52, § 4.81(1) defines an areaway as "an extended basement of a building within the street right-of-way." Thus, as relevant to this appeal, the sidewalk requiring repairs is above the areaway structure, which is also in need of repairs. In a prior appeal, this Court affirmed the trial court's determination that plaintiff had to repair the sidewalk and Arath had to repair the areaway beneath the sidewalk. *Grand Rapids v Arath III, Inc*, unpublished per curiam opinion of the Court of Appeals, issued June 26, 2018 (Docket No. 337920), p 4.

However, while that appeal was pending, Arath entered into a contract in April 2018, with the Downtown Development Authority of the City of Grand Rapids (DDA). The contract provided that Arath had an obligation to repair the areaways pursuant to the trial court's prior order and that

-1-

Arath requested funding by way of a grant "to assist with the cost of repairs." The contract further stated that the DDA Board "approved funding for a portion of the cost of repairing the areaways through its downtown enhancement grant program in accordance with the terms and conditions" of the contract in question. Arath also had to file "[p]lans and specifications for bracing and repairing the areaways," with such plans and specifications to "include reconstruction of the sidewalk." If the bracing and repairing of the areaways—along with reconstruction of the sidewalk—were completed by a certain date, then the DDA would bear 50% of the costs of repairing and bracing the areaway not to exceed $200,000. The contract referred to the bracing and repairs of the areaway along with reconstruction of the sidewalk collectively as "Repairs." The contract also included prerequisites inhibiting Arath's receival of the grant. Relevant to this appeal, ¶¶ 2D-2E states:

> D. Upon submission of a complete and timely request for reimbursement, and final inspection and approval by the City Building Official, the DDA shall reimburse Arath for 50% of the total cost of bracing and repairing the areaways, in an amount not to exceed the amounts provided in subsection 1.B. above.

> E. Arath shall be solely responsible for payment of all costs that exceed 50% of the total cost of bracing and repairing the areaways.

Because the contract was entered into during the course of the previous appeal, the parties stipulated to amend the trial court's prior order to incorporate and authorize the contract. After the contract was incorporated into the trial court's previous order, the trial court held an evidentiary hearing to determine allocation of costs. Ultimately, the court held that Arath was responsible for costs associated with both the sidewalk and areaway because it interpreted the contract to mean that, under ¶ 2E, Arath had assumed all liability. Accordingly, the trial court assessed no costs against plaintiff.

## II. CONTRACT INTERPRETATION

### A. STANDARD OF REVIEW

Arath argues that the trial court erred in its interpretation of the contract because there was never any intentional or voluntary assumption by Arath of plaintiff's obligation to pay for the sidewalk. We review de novo a trial court's interpretation of a contract. *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019). "An unambiguous contract must be enforced according to its terms." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

"A court's primary obligation when interpreting a contract is to determine the intent of the parties. The parties' intent is discerned from the contractual language as a whole according to its plain and ordinary meaning." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 220; 933 NW2d 363 (2019). (citation omitted). "[C]ourts must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "A court may not rewrite clear and unambiguous language under the guise of interpretation." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010).

Here, the trial court's interpretation of the contract was contrary to the plain and ordinary meaning of the contract's terms. The contract provided that Arath was responsible for repairs to the areaway, that Arath requested a grant from the DDA to assist in the repairs of the areaway, and that the DDA would provide funding "for a portion of the cost of repairing the areaways." The contract also provided that the plans and specifications submitted by Arath must include plans and specifications for reconstruction of the sidewalk. Importantly, the contract refers to both the sidewalk and areaway repairs as "Repairs." Throughout the contract, the word "Repairs" is used when referring to reconstruction of both the sidewalk and areaway. Yet, no such reference was made in the provision disputed by the parties, i.e., ¶ 2E.

Instead, ¶ 2E states that "Arath shall be solely responsible for payment of all costs that exceed 50% of the total cost of bracing and repairing the areaways." Contrary to plaintiff's position that the use of the words "solely" and "all" means that Arath assumed liability for costs of repairing the sidewalk, when read in context, the words "solely" and "all" merely limited the DDA's liability. Plaintiff was not a party to the contract. Therefore, use of the words "solely" and "all" only applied as between Arath and the DDA, meaning that Arath was "solely" responsible for "all" costs that exceeded $200,000 of the cost of repairing and bracing the areaway. Thus, the use of those two words limited the DDA's liability so as to make Arath responsible for any remaining costs *of bracing and repairing the areaway* above $200,000, not to make Arath liable for the costs in excess of $200,000 of repairing the areaway *and* sidewalk.

Moreover, the contract's reference to the plans and specifications "including reconstruction of the sidewalk" and the DDA's requirement to have the "Repairs" finished by a certain date merely reflects that both the sidewalk and areaway needed to be repaired simultaneously.[1] Thus, the contract reflected the reality that in order to receive the grant for bracing and repairing the areaway, the sidewalk must also have been completed. This requirement does not mean that Arath assumed liability for the costs of repairing the sidewalk.

In sum, the contract did not alter the trial court's previous order nor did it negate our previous affirmance of the part of the trial court's order rendering plaintiff liable for the sidewalk and Arath liable for the areaway. The contract only required submission of plans and specifications for repair of the sidewalk and areaway, which was required by the very nature of the repairs, and in return, the DDA would provide a certain amount of money to Arath for its obligation to repair the areaway. Nowhere in the contract does Arath expressly or impliedly assume liability for the costs of repairing the sidewalk.

---

[1] The sidewalk and areaway were considered an "areaway sidewalk," which means that it was "a sidewalk constructed over an areaway." Grand Rapids Code, title IV, ch 52, § 4.81(1). As recited in the contract, "[t]he areaways extending from the basement of the Keeler Building into the public right-of-way are in need of significant repair such that the sidewalks over the areaways have collapsed." Therefore, as asserted by Arath and undisputed by plaintiff, the repairs "had to be performed simultaneously" and it was "not a project where Arath [could] perform its areaway repairs and then leave the sidewalk repairs to the City to complete."

Because the trial court erred in its interpretation of the contract, we reverse the court's order stating that Arath is responsible for the costs of repairing the sidewalk. In addition, because there remains a dispute regarding the cost of replacing the sidewalk, we remand for further proceedings.

Reversed and remanded. Arath may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly