*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEO SIMMONS,

      Plaintiff-Appellant,

v

PHYLLIS SIMMONS,

      Defendant-Appellee.

UNPUBLISHED
May 16, 2024

No. 365916
Lapeer Circuit Court
LC No. 2021-054341-DO

Before: BORRELLO, P.J. and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Plaintiff filed for divorce and then was involved in a motorcycle crash. The judgment of divorce included the parties' settlement agreement, but the parties later disagreed about defendant's right to a portion of plaintiff's lawsuit proceeds related to the motorcycle crash. The trial court ordered the proceeds be divided and that plaintiff pay attorney fees. We affirm in part and reverse in part.

Plaintiff filed for divorce in January 2021. In June 2021, plaintiff was involved in a motorcycle crash that ultimately resulted in the amputation of his leg. The parties participated in mediation in November 2021, and the January 2022 consent judgment of divorce (CJOD) included its terms. Under "Pending Litigation," the CJOD provided:

> IT IS ORDERED that Defendant is awarded 50% of the marital portion of any lawsuit proceeds realized relating to Plaintiff's motorcycle accident in June 2021 (excluding any damages for pain and suffering and / or lost wages) including being responsible for 50% of any net medical expenses not covered by the claims incurred through the date of the judgment of divorce. Plaintiff shall continue to keep Defendant notified of any updates in his lawsuit, including the information as to the court in which he files his case, including the case number, his attorneys and his attorneys' phone numbers.

In November 2022, defendant moved to enforce the judgment and for costs and fees. Defendant asserted that plaintiff had removed funds from his retirement account after mediation, resulting in her receiving $350, rather than approximately $16,000, as agreed upon. Defendant

-1-

additionally requested that the trial court order plaintiff to provide information about his personal-injury lawsuit. The trial court subsequently ordered that each party was entitled to their own retirement accounts, denied defendant's request for attorney fees, and ordered plaintiff to provide defendant with information about his personal-injury lawsuit.

In January 2023, defendant moved for an order to escrow plaintiff's lawsuit proceeds, asserting that plaintiff had settled his lawsuit for $100,000. Defendant explained the settlement was reduced by $2,000 in costs, a $15,000 VA lien, and plaintiff's attorney receiving 1/3 of the funds. As a result, defendant asserted that plaintiff would receive approximately $50,000, of which defendant was due half. Defendant further requested attorney fees. The trial court ordered that once plaintiff received proceeds from his lawsuit, plaintiff was to issue to defense counsel a check for 50% of the proceeds to be held in escrow until further order of the court.

In a subsequent motion, defendant provided a "Release and Trust Agreement," which showed that plaintiff received $50,000 "in full settlement and final discharge of all claims under the above numbered policy for bodily injuries to [plaintiff], a single male, arising out of the ownership, maintenance or use of an underinsured automobile" by the other driver. The agreement showed that plaintiff reserved his right to "any and all first party benefits" to which he was entitled. Further, defendant provided a "Full Release of All Claims with Indemnity," which showed that plaintiff received $50,000, forever discharging the other driver "from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of wages, expenses, hospital and medical expenses, loss of consortium, loss of service, and any compensation, whatsoever, which [plaintiff] now has/have or which may hereafter accrue." The agreement again reserved plaintiff's right to any and all first party benefits.

In response to defendant's motions, plaintiff argued that there was no marital portion of his lawsuit settlements because pain and suffering and personal-injury proceeds are separate property. Plaintiff also moved the trial court to release the lawsuit proceeds, arguing that the parties negotiated at mediation that half of only the "marital portion of the proceeds" be divided. Plaintiff asserted that he purposefully negotiated the term "marital" into the CJOD because plaintiff "was under the reasonable belief that there would be no marital proceeds."

The trial court held a hearing on the motions. Plaintiff argued that the lawsuit proceeds were not marital property. Defendant argued that "the thrust of the agreement" was that the lawsuit proceeds would be divided. Further, defendant argued that the underinsured coverage had been purchased with marital assets during the marriage. The trial court held that defendant was entitled to half of the lawsuit proceeds. Next, defendant argued that plaintiff had previously been deceitful related to withdrawing money from his retirement account, which was why defendant needed to file the motion to escrow the lawsuit proceeds. Plaintiff argued that the trial court had already addressed the retirement-account issue. The trial court awarded defendant attorney fees.

Plaintiff now appeals.

This Court reviews de novo questions of law involving the interpretation of a contract. *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). "Consent judgments of divorce are contracts and treated as such." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017). "The goal of contract interpretation is to determine and enforce the parties' intent on the

basis of the plain language of the contract itself." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (cleaned up). Unambiguous contract language must be enforced as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010).

Generally, "[a]ssets earned by a spouse during the marriage are properly considered part of the marital estate," including when a party receives the assets after the judgment of divorce. *Byington v Byington*, 224 Mich App 103, 110; 568 NW2d 141 (1997). A trial court may not divide a party's separate property except under specified circumstances. *Korth v Korth*, 256 Mich App 286, 291; 662 NW2d 111 (2003). "Proceeds from a personal injury suit meant to compensate for pain and suffering are not joint marital property." *Pickering v Pickering*, 268 Mich App 1, 10; 706 NW2d 835 (2005). A trial court may treat a personal-injury settlement as marital property when "the original action included a loss of consortium and the settlement check was made payable to both parties and treated by the parties as marital property." *Id*. at 11.

In the CJOD, the phrase "marital portion" clearly and unambiguously refers to marital assets, and the personal-injury proceeds received as a result of suing the tortfeasor are considered separate property. See *Pickering*, 268 Mich App at 10-11. The lawsuit against the tortfeasor did not include a loss-of-consortium claim,[1] and there is no evidence that the settlement check was made payable to both parties or was treated like marital property. See *id.*

Defendant argues that the agreement would not have specifically excluded proceeds for "pain and suffering" or "lost wages" if the parties had intended for the agreement to abide by caselaw defining marital property. Lost wages are not considered separate property in the same way that proceeds compensating for pain and suffering are. See *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010); *Pickering*, 268 Mich App at 10-11. The language of the parties' agreement specifically excludes defendant from sharing in lost wages to which she may otherwise have been entitled. The inclusion of this language does not detract from the plain meaning of the contract, which otherwise provides for a division of any *marital* portion of the lawsuit proceeds. See *Bayberry Group*, 334 Mich App at 393. Further, this situation differs from one in which a court determines to invade separate property. See *Pickering*, 268 Mich App at 10-11. The CJOD in this case included the terms of the settlement agreement, meaning that it was not necessary for the trial court to make any decisions about the distribution of the assets.

Defendant also argues that there was no mutuality of agreement and, therefore, the settlement agreement was not a valid contract and must be set aside. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Watts v Polaczyk*, 242 Mich App 600, 717; 619 NWd 714 (2000). Accordingly, it was defendant's duty to be aware that "marital portion" excluded personal-injury lawsuit proceeds.

---

[1] Although unlikely, it was not an impossibility that defendant could have sought to intervene and pursue a claim for loss of consortium, as the parties were still married at the time of the lawsuit involving the motorcycle collision.

Therefore, the trial court erred by finding that defendant was entitled to 50% of proceeds from the lawsuit against the tortfeasor.

Defendant is, however, entitled to 50% of the underinsured coverage. Defendant stated at the motion hearing that the underinsured-coverage policy premiums were "paid for during the time of the marriage." Plaintiff's attorney confirmed this on appeal. "Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the no-fault act. Accordingly, the rights and limitations of such coverage are purely contractual and are construed without reference to the no-fault act." *Rory*, 293 Mich App at 465-466. See also *Dawson v Farm Bureau Mut Ins Co of Michigan*, 293 Mich App 563, 568; 810 NW2d 106 (2011). To the extent that plaintiff argues that the underinsured settlement should also be encompassed within "pain and suffering" and excluded from the marital estate under the parties' CJOD, we reject that argument under the facts of this case. There is ample caselaw establishing that proceeds from *tort* claims for "pain and suffering" are separate from marital property, as explained earlier. The husband's person, and any rights or interests that naturally flowed from it, were never a marital asset. The underinsured contract, however, was unambiguously an asset of the marital estate, and any rights or interests that naturally flowed from it were a marital asset. See *Dawson*, 293 Mich App at 568. To divest defendant of her share of proceeds from that marital asset, the CJOD would need to have been more explicit to put defendant on notice that she was giving up a valuable asset.

Next, plaintiff briefly argues that the trial court erred by awarding defendant attorney fees. This Court reviews for an abuse of discretion a trial court's decision on attorney fees. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. Attorney fees are not generally recoverable "unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). In divorce cases, an award of attorney fees may be permitted on the basis of need or, for example, when the party requesting fees "has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Id*. at 165 (cleaned up).

Here, the trial court did not make findings sufficient to determine whether the attorney fees were due to anything beyond the issue of the lawsuit proceeds. Although defendant mentioned plaintiff's withdrawal of retirement funds at the hearing about the lawsuit proceeds, the trial court had denied defendant's request for attorney fees in its order about the retirement funds. Because it was not unreasonable for plaintiff to contest the release of personal-injury funds, an award of attorney fees related to that disagreement is not proper. See *Reed*, 265 Mich App at 164. There is also not a sufficient record to determine that attorney fees were otherwise proper, and, therefore, the trial court erred by awarding attorney fees.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young