*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA DUDLEY,

Plaintiff-Appellee,

v

NATHANIEL MEHMED,

Defendant-Appellant.

UNPUBLISHED
January 14, 2026
9:10 AM

No. 374978
Kent County Circuit Court
LC No. 23-10436-DO

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

PER CURIAM.

Defendant, Nathaniel Mehmed, appeals by right from the judgment of divorce awarding half the increase in equity of the marital home since its purchase to plaintiff, Laura Dudley. Defendant argues that the trial court's division of home equity was erroneous. For the reasons that follow, we affirm.

## I. BACKGROUND AND FACTS

The parties began dating in July 2015 and the home in question was purchased about a year later in June 2016. Plaintiff testified at trial that the parties began looking at homes to buy together in 2016, communicated with a realtor together, and toured numerous potential homes together. For his part, defendant testified that he began working with a realtor alone and secured a mortgage lender's preapproval with solely his own income so that he could afford the home if the relationship did not work out. Defendant alone was named on the deed and the mortgage, and plaintiff's name was not placed on either when defendant refinanced in 2020. Defendant provided a $10,000 down payment for the purchase of the home and plaintiff paid $450 for a home inspection and $400 for the appraisal. Defendant testified that he brought up placing plaintiff on the mortgage during the refinance, but plaintiff "seemed hesitant about it, and ultimately, it went nowhere," although plaintiff denied that defendant ever asked her to finance the mortgage.

Before moving into the home in August 2016, the parties removed carpet, painted, remediated lead-based paint, cleaned, and did general yardwork. They evenly split mortgage and utility payments upon moving in and continued doing so until their separation. Plaintiff also contributed financially to home repairs, including half the cost of the asbestos remediation, piping

repair, repiping the whole house, bathroom renovation, porch gutters, a dog fence, and electrical work. Defendant did general maintenance and landscaping, repaired window trim, and paid for gutters for the majority of the home as well as glass block windows. Whereas plaintiff testified that the home had been the parties' "joint venture" since the beginning, defendant testified that he "really felt that it became ours when we were engaged."

In October 2019, the parties became engaged, with a wedding originally planned in July 2021 that got pushed back because of the pandemic. The parties ultimately married in July 2022. Plaintiff moved out in July 2023 and filed for divorce in October 2023. The parties settled many issues at mediation, but went to trial on the division of home equity and a camera.

Relevant to this appeal, the trial court awarded to plaintiff half the increase in the equity of the home from the date it was purchased until the date that the parties separated, minus defendant's down payment, for a total of $49,594. The court calculated this amount by subtracting the remaining mortgage balance on the home from its appraised value as of July 2023, dividing that figure in half, and subtracting the $10,000 down payment.

This appeal followed.

## II. STANDARD OF REVIEW

We review "for clear error a trial [court's] findings of fact regarding whether a particular asset qualifies as marital or separate property." *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). "In divorce actions, findings of fact made in relation to the division of marital property are reviewed under the clearly erroneous standard." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Woodington*, 288 Mich App at 357. "We accord special deference to a trial court's factual findings that were based on witness credibility." *Id.* at 358. "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Id.* at 355. "The court's dispositional ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Pickering*, 268 Mich App at 7.

## III. ANALYSIS

### A. DIVISION OF PREMARITAL EQUITY IN THE HOME

Defendant argues that the trial court clearly erred by awarding plaintiff half the premarital equity in the home. We disagree.

In a divorce action, a trial court must first classify assets as marital or separate before dividing marital property between the parties. *Reeves*, 226 Mich App at 493-494. Marital assets are those that came "to either party by reason of the marriage . . . ." MCL 552.19. "Generally, marital assets are subject to being divided between the parties, but separate assets may not be invaded." *Woodington*, 288 Mich App at 358. "However, a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met." *Reeves*, 226 Mich App at 494, citing MCL 552.23; MCL 552.401. Relevant here, a separate estate may be invaded when

the other spouse "contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401. Put differently, "[w]hen one significantly assists in the acquisition or growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves*, 226 Mich App at 495. Further, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010) (cleaned up). When dividing marital property, courts must strive to equitably divide increases in marital assets that have occurred between the beginning and end of the marriage. *Reeves*, 226 Mich App at 493.

A trial court dividing marital assets must also consider the following factors whenever "they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity." *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).

Here, defendant does not dispute the majority of the trial court's findings on the *Sparks* factors—that the parties had a short one-year marriage, worked full time and could individually support themselves, and appeared under 50 years old and healthy. Notably, defendant does not dispute the trial court's findings in the "contributions to the marital home" category—that the parties considered the residence as the marital home, evenly divided all costs, and both worked to improve and maintain the home. Instead, defendant objects to the weighing of the "general principles of equity" factor. See *id.* at 160. Under that factor, the trial court found that the home was the parties' joint venture because they chose it together, moved in together, and shared its obligations equally.

Defendant emphasizes the fact that the home was purchased with a mortgage solely in his name before the marriage with his down payment, and he characterizes the premarital relationship as that of a landlord and tenant. But the trial court concluded that the home was commingled with marital assets such that it became marital property. In doing so, the trial court observed that the parties both contributed to the home's acquisition, that they split bills evenly, that they made joint decisions about repairs and maintenance, and that they worked on the home together. In sum, the trial court found that everything relating to the home was done together with the parties' intent to treat the residence as a marital home from the inception of its purchase. Given the parties' testimony to that effect, we find no clear error in this determination.

And on this record, we likewise find no clear error in awarding premarital equity in the home to plaintiff given that she "contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401. Defendant has pointed to no record evidence that he had a lease with plaintiff such that the relationship was merely that of a landlord and tenant. Nor was the trial court required to weigh defendant's taking on the mortgage more heavily than, or to the exclusion of, other factors, especially when it was undisputed that the parties shared equally in the home payments and related costs and expenses. And to the extent that the trial court credited plaintiff's testimony over defendant's that plaintiff significantly contributed to the acquisition and growth of the home—such as plaintiff's testimony that they worked together to acquire it—we defer to the

trial court's findings that are grounded in the credibility of witnesses. See *Woodington*, 288 Mich App at 358.

Nor do we find clear error in the trial court's decision to equally divide the increase in the home's equity from the purchase date to the parties' separation date, minus the return of defendant's down payment (to which plaintiff did not object). Equally splitting the increase in value from the purchase date constitutes an equitable division of the marital asset. See *Reeves*, 226 Mich App at 493. We cannot say that we are "left with the firm conviction that the division was inequitable." *Pickering*, 268 Mich App at 7.

## B. EQUALIZATION CALCULATION

Defendant also argues that the trial court's equalization calculation regarding the increase in the home's equity was flawed because he was not awarded any return on investment from his $10,000 down payment on the home. But defendant did not preserve this issue in the trial court proceedings by arguing that he was entitled to the return on investment from his down payment. To the contrary, he argued that, should the trial court reject his argument that plaintiff be awarded no premarital equity, the home's increase in value since its purchase should be divided equally.

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs and Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023).

> Under that rule, litigants must preserve an issue for appellate review. To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court. Moreover, the moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention. If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue. [*Id*. (citations omitted).]

Here, by failing to raise the issue of defendant's return on investment from his down payment in the trial court proceedings, defendant "deprived the trial court of the opportunity" to consider it "in a timely and equitable manner . . . ." *Id*. at 290. The issue is therefore waived, and we decline to address it. See *id*. at 294.

Affirmed.

/s/ Thomas C. Cameron
/s/ Daniel S. Korobkin
/s/ Mariam S. Bazzi