# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA BURNS,

    Plaintiff-Appellee,

v

MICHAEL BURNS,

    Defendant-Appellant.

UNPUBLISHED
December 18, 2014

No. 317419
Oakland Circuit Court
LC No. 2011-781911-DM

Before: Murray, P.J., and Saad and Hoekstra, JJ.

Per Curiam.

In this action for divorce, following a bench trial, defendant appeals as of right the judgment of divorce resolving issues of child custody and support, spousal support, distribution of marital property, and the award of attorney fees. Because the trial court's division of marital property was fair and equitable, and the trial court did not abuse its discretion in awarding spousal support to plaintiff, we affirm.

The parties married on November 1, 1991, and they have two children together, both of whom were teenagers at the time of trial. Defendant was the family's undisputed breadwinner during the course of the parties' marriage and had an established work history, while plaintiff, who taught for a brief period early in the parties' marriage, stayed at home after the birth of the couple's children. Plaintiff returned to the workforce in 2010 in an accounts receivable position at a law firm earning less than $40,000. In comparison, in his most recent position, defendant earned approximately $95,000 per year.

Plaintiff initially filed for divorce on July 30, 2010, but dismissed the case in exchange for defendant's agreement to seek counseling, and the couple reconciled for a time. The reconciliation did not last, however, and plaintiff filed her second complaint for divorce on March 2, 2011. Notably, before trial, the trial court entered a status quo order regarding the parties' assets. The parties eventually reached an agreement regarding the question of child custody, but the case proceeded to trial to resolve monetary issues relating to distribution of property, child support, and spousal support.

At trial, the parties extensively litigated the question of fault, which they both asserted should factor into the trial court's decision. Plaintiff maintained the fault for the breakdown of the marriage rested with defendant, whom she described as controlling and domineering. Defendant, in contrast, attributed the breakdown in the marriage to an affair he maintained

-1-

plaintiff had begun, if not physically, than emotionally, during the course of their marriage with her employer and long time family acquaintance, Michael Cianciolo. In its findings of fact, the trial court largely rejected the parties' assertions of fault, concluding instead that "the breakdown of the marital relationship happened over time and the divorce filing merely escalated grievances . . . ." The trial court further determined that all of the parties' assets were marital property subject to division between the parties.

However, significantly, during the course of the divorce litigation, it was discovered that defendant had withdrawn substantial sums, totaling more than $190,000, from a Janus IRA. This early withdrawal resulted in considerable tax consequences and penalties. Further, although defendant maintained he used the money to pay marital debt, the trial court specifically found defendant's withdrawal of funds to be "improper," and it concluded that defendant had provided insufficient verification regarding his use of these funds. Indeed, regarding financial matters, defendant had also concealed from plaintiff his withdrawal of over $17,000 from a bank account which he used toward a down payment on a new home during the course of divorce proceedings. Defendant then endeavored to squash plaintiff's efforts to subpoena the bank records which led to the discovery of this conduct. The trial court recognized in its opinion that "during the pendency of this case, [defendant] evaded financial questions during these proceedings which needlessly prolonged and protracted these proceedings and caused the marital estate thousands of dollars in taxes and penalties which he will be required to pay."

In fashioning the division of property, as described in more detail *infra*, the trial court considered defendant's financial underhandedness during the course of proceedings. In addition, cognizant of the parties' history, the parties' assets, and plaintiff's need for support while transitioning to a different standard of living, the trial court awarded spousal support to plaintiff.[1] Defendant now appeals to this Court as of right.

On appeal, defendant argues that the trial court's judgment was neither fair nor equitable, and in particular he challenges the distribution of marital property and the award of spousal support to plaintiff.[2]

---

[1] The trial court also awarded child support and attorney fees to plaintiff, but defendant does not specifically contest these awards on appeal.

[2] Insofar as defendant's brief alludes to other possible claims—including allegations of judicial bias, supposed evidentiary errors, and assertions of errors relating to depositions—these issues were not included in defendant's statement of the issues presented, and are therefore not properly before this Court. MCR 7.212(C)(5); *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). Further, to the extent defendant discusses these complaints in passing, he does so without citation to legal authority or clear legal argument of any kind, meaning the issues may be considered abandoned. *Yee v Shiawassee Co Bd of Com'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Consequently, we decline to address these matters and will focus on the issues of property distribution and spousal support.

Regarding the division of property, in a divorce action, this Court begins its review of a property division "by first reviewing the trial court's factual findings for clear error." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Hodge v Parks*, 303 Mich App 552, 555; 844 NW2d 189 (2014) (citation omitted). "Special deference is given to the trial court's findings when they are based on the credibility of the witnesses." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). After reviewing the facts for clear error, this Court then determines "whether the dispositional ruling was fair and equitable in light of the facts." *Olson*, 256 Mich App at 622. This Court will reverse a dispositional ruling "only if definitely and firmly convinced that the disposition is inequitable." *Woodington*, 288 Mich App at 355.

When the trial court divides property, as a general rule, marital assets are subject to division between the parties, while the parties' separate assets may not be invaded. *Id.* at 364. "Absent a prenuptial agreement, a trial court should equitably distribute marital property in light of all the circumstances." *Id.* at 363. Such division does not require mathematically equal proportions, but "any significant departure from congruence must be clearly explained." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). Based on the circumstances of a case, to equitably divide the marital property, the trial court may consider:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id.*]

The trial court must make specific findings regarding factors it determines to be relevant, *Woodington*, 288 Mich App at 363-364, and may also consider additional factors that may be relevant to a particular case, *Berger*, 277 Mich App at 717. A court should not, however, assign disproportionate weight to any one circumstance. *Id.*

In this case, defendant does not seriously contest the trial court's factual findings underlying the property distribution. Indeed, he concedes on appeal that he "does not have many issues with the trial court's findings of fact, except as to [defendant's] credibility." To the extent defendant intends to challenge the trial court's assessment of his credibility, he ignores the special deference due the trial court's assessment of witness credibility. *Woodington*, 288 Mich App at 355. Further, given defendant's repeated and blatant disregard of the trial court's status quo order, which included withdrawals in the amount of more than $190,000 from an IRA, the trial court's assessment of defendant's credibility, and its conclusion that defendant had provided insufficient explanation for his use of the funds, was not clear error.

As with its assessment of defendant's credibility, the trial court's other findings of fact were clearly rooted in the testimony provided at trial and, affording deference to the trial court's ability to judge credibility, there is no basis on which to conclude the trial court's factual findings were clearly erroneous. Specifically, for example, contrary to defendant's continued protestations on appeal, the trial court did not clearly err in rejecting defendant's contention that plaintiff's alleged extramarital affair—which the trial court concluded did not begin in earnest

until after plaintiff filed for divorce—led to the breakdown of the marriage. Based on the testimony presented, the trial court instead reasonably concluded that the "the breakdown of the marital relationship happened over time and the divorce filing merely escalated grievances . . . ." Given this finding, which was not clearly erroneous, there is no basis for defendant's argument that plaintiff's supposed fault should have reduced her share of the marital estate.

Recognizing there is no clear error in the trial courts findings, the real issue on appeal is whether the property distribution in this case was equitable in light of all the facts. Reviewing the record and the trial court's award, we are not left with a definite and firm conviction that the award was inequitable. On the contrary, the trial court endeavored to obtain an equal division of property on the circumstances of the case, which appropriately included consideration of defendant's deceitful financial conduct during the course of proceedings.

To begin with, regarding personal property, the trial court ordered an equal split of property remaining in the marital home. When doing so, however, the trial court accounted for the $5,000 in property already taken by plaintiff, and it afforded defendant first pick of $5,000 worth of property in the house, after which the parties would alternate selection of the remaining property. Plainly this was a fair and equitable division. Similarly, the trial court equally divided defendant's Advanced Technology Services (ATS) IRA between the parties in a 50/50 split. Regarding vehicles, defendant received his car and plaintiff kept her leased car. In addition, defendant was permitted to keep the GMC truck and, to offset this, the trial court awarded plaintiff her modest IRA worth approximately $10,000. The vehicle used by the parties' daughter was ordered to be sold or an arrangement made for her continued use of the car. The trial court also equally divided savings bonds, frequent flier miles, and other reward points, despite the fact that defendant cashed in points during trial in violation of the status quo. Both parties were left to pay their own personal loans, i.e., defendant's loan from his mother and plaintiff's from Cianciolo. Both parties also had individual responsibility for their credit card charges accumulated since February 1, 2013. The parties were also ordered to share equally in their daughter's outstanding medical expenses. Clearly, these assets and liabilities were equally divided.[3]

The more complicated divisions of property relate to the marital home, the Janus IRA, credit card debt before February 1, 2013, the E-trade account controlled by defendant, the money used by defendant for down payment on a new home, the carry forward losses, and the investment interest deduction. However, while these issues may have been more involved, the trial court reached a result that was both fair and equitable under the circumstances. Particularly, the trial court awarded defendant the E-trade account, which defendant controlled and which apparently had moderate negative value, as well as all the carry forward losses of $197,000 and the investment interest deductions of $49,977. According to expert testimony, the carry forward

---

[3] To the extent defendant challenges the trial court's determination regarding tuition for the parties' son at a private school, it was not unfair or inequitable to require defendant to pay this sum where the trial court concluded that it was defendant's decision to send their son to private school and that plaintiff had not agreed to contribute financially.

losses and the investment interest deductions have value to defendant as they can be used to reduce his tax liability in future years. The expert at trial assigned these amounts present cash values of $49,250 and $12,000 respectively. Because defendant was awarded the full carry forward losses and the investment interest deductions to keep and use in future years, the trial court evenhandedly awarded plaintiff half of the current cash value of each, i.e., $24,625 and $6,000. Plaintiff had the option, and she elected, to take these funds from proceeds relating to the sale of the marital home. There is nothing inequitable or unfair in this distribution.

Regarding the marital home, consistent with the parties' wishes, the trial court ordered the sale of the house. From the proceeds, the trial court ordered certain adjustments. Specifically, in addition to plaintiff's election to receive her share of the value of the investment interest deductions and carry forward losses from the sale of the proceeds of the house, plaintiff had the option, and she elected, to receive her lump sum spousal support, discussed *infra*, from the sale of the proceeds of the house. Thus, from the sale of the house, plaintiff was to receive a total of $74,625.00 before the proceeds were divided in an equal split between the parties. In other words, contrary to defendant's representations on appeal, plaintiff was not awarded a larger share of the marital home; she received compensation from the sale for her share of investment interest deductions and carry forward losses as well as the awarded spousal support. Likewise, the trial court awarded defendant a credit, to be taken before the division of the sale proceeds, for certain amounts he individually paid down on the mortgage during the divorce proceedings. After these amounts were paid to defendant and plaintiff respectively, and after payment of any expenses related to the sale, the parties would in fact split the remaining proceeds from the sale 50/50.

Regarding the Janus IRA, the trial court ordered that it be valued as of the date of the entry of the judgment of divorce. Given defendant's past unauthorized withdrawals from this account, the trial court ordered that certain amounts withdrawn by defendant—specifically, the $35,600 withdrawal on January 17, 2013, the $11,000 used to repay his mother for a personal loan, the $10,747.45 used toward the 2012 tax bill, the $83,000 for the estimated federal tax bill, the $9,701.55 defendant took for himself to equalize the 2011 taxes, and the $10,500 state estimated tax—should be added back into the account to determine the appropriate value to be divided, of which plaintiff would receive one-half. In making the determination to add these amounts back into the retirement fund before dividing the Janus IRA, the trial court made the specific finding that defendant "improperly withdrew funds" from this account during the course of the divorce litigation. The trial court also found insufficient verification in support of defendant's claim that he used the funds to pay marital debts, noting that most of defendant's evidence consisted of self-serving spreadsheets created by defendant to account for his use of the money. Given these factual findings, there was nothing unfair in the trial court's treatment of the Janus IRA. It is well-established that fault is a proper factor to consider in the division of assets, and this "is particularly true in a case like this where . . . the fault was directly related to the parties' assets and debts." *Washington v Washington*, 283 Mich App 667, 676; 770 NW2d 908 (2009). As the trial court logically recognized, defendant's unilateral withdrawals and his persistent evasion of financial questions during the proceedings led to substantial taxes and penalties for the couple. In such circumstances, adding back in part of the withdrawn funds to shield plaintiff from the effects of defendant's wrongdoings was both fair and equitable. Indeed, it is worth noting that, in total, defendant withdrew upwards of $190,000, but the trial court

added back in closer to $160,000, apparently giving some credence to defendant's assertion that part of the funds went for the payment of marital debts.

As a related matter, the trial court determined that plaintiff should be held harmless relating to the parties' credit card debt arising before February 1, 2013. Given defendant's withdrawals from the Janus IRA, and his specific claim that he used these amounts to pay off credit cards, the trial court's decision in this regard was an equitable one under the circumstances because, in essence, defendant had asserted that marital funds had already been expended toward repayment of these obligations. Likewise, the trial court appropriately awarded plaintiff one-half of the $17,111.89 defendant withdrew from a bank account and used for the down payment on the purchase of a new home during the divorce proceedings without knowledge or permission from plaintiff. As noted, defendant's improper financial conduct was plainly a permissible factor for the court to consider, and the trial court's determination in light of defendant's actions in this regard does not render the trial court's decision unfair or inequitable. See generally *Washington*, 283 Mich App at 676.

Ultimately, while defendant complains that the overall result is unfair, the record demonstrates that the trial court did its best to unravel a complicated financial tangle created largely by defendant's improper withdrawals—which resulted in large penalties and taxes—and his inability to sufficiently account for the whereabouts of those funds. To the extent the trial court deviated from a perfect 50/50 split of property, it adequately explained its reasoning by detailing defendant's underhanded financial conduct during the course of the divorce. See *Berger*, 277 Mich App at 717.

In sum, based on this record, we find without merit defendant's contentions that the distribution of assets appears inequitable or unfair.

On appeal, defendant also challenges the trial court's award of spousal support to plaintiff. In particular, the trial court awarded plaintiff a lump sum payment of $44,000, to be awarded from the proceeds of the sale of the marital home.

We review the award of spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Woodington*, 288 Mich App at 355. Findings of fact relating to an award of spousal support are reviewed for clear error. *Id.*

"The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Id.* at 356. Spousal support can be paid in a lump sum, i.e., in gross, or otherwise as the court in its discretion determines to be just and reasonable. MCL 552.23(1). Spousal support does not follow a rigid formula; rather, it must be considered on a case-by-case basis in light of the particular circumstances of the case. *Loutts*, 298 Mich App at 30. See also MCL 552.23(1).

> Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties

to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356.]

In addition, a voluntary unexercised ability to earn may be used to impute income for purposes of awarding spousal support. See *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000). The trial court should make specific findings regarding the factors that are relevant to the particular case. *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

In this case, the trial court did not abuse its discretion in awarding spousal support to plaintiff. The facts show that defendant had a long-established employment history and most recently earned upwards of $90,000. He had also long supported plaintiff financially in her role as a stay-at-home mother during the course of their more than 20 years of marriage and, although plaintiff had recently returned to the workforce, she was earning considerably less than the earning capacity demonstrated by defendant. While defendant lost his job toward the end of trial, the trial court did not abuse its discretion in determining he had the ability to earn $52,000 per year when he had a well-established ability to work at a high earning capacity, and evidence credited by the trial court indicated that he had, in the past, turned down jobs which he felt were beneath him. In addition, he had also demonstrated a measure of financial underhandedness by improperly withdrawing funds from the Janus IRA during the course of divorce proceedings. In such circumstances, where defendant had not truly begun to apply for jobs at the time he gave his trial testimony, despite being unemployed for several weeks, the trial court did not abuse its discretion in imputing income to him. See generally *Moore*, 242 Mich App at 655. Indeed, in awarding a lump sum, rather than ongoing support, the trial court specifically considered defendant's reduced income stream as well as the parties' available assets and it endeavored to balance the needs of the parties to arrive at a measure of support reasonable under the circumstances. On the whole, given the parties' history, their assets and respective earning capabilities, and plaintiff's need for assistance transitioning to a new standard of living, the trial court did not abuse its discretion in awarding spousal support. Cf. *Berger*, 277 Mich App at 727. See also *Healy v Healy*, 175 Mich App 187, 191-192; 437 NW2d 355 (1989).

Affirmed. Having prevailed in full, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra