# STATE OF MICHIGAN

# COURT OF APPEALS

---

LAWRENCE WAYNE RHODES,

      Plaintiff-Appellant-Cross-Appellee,

v

CAROL ANNETTE RHODES,

      Defendant-Appellee-Cross-
      Appellant.

UNPUBLISHED
May 19, 2016


No. 326623
Wayne Circuit Court
LC No. 14-107067-DO

---

Before: MURPHY, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this domestic-relations litigation, the trial court entered a judgment of divorce following an unorthodox one-day bench trial, which proceeded more in the fashion of an elaborate settlement conference, with the trial court, absent objection, methodically going through the disputed issues and property while receiving input from counsel and the sworn-in parties themselves on each matter. Plaintiff appeals the divorce judgment as of right, challenging the trial court's award of $6,573 in attorney fees to defendant and its denial of plaintiff's request for attorney fees, as well as the court's award of $5,700 to defendant as her share of plaintiff's Harley Davidson motorcycle (the Harley), which he retained. Defendant has filed a cross-appeal, arguing that the trial court failed to conduct the trial in accordance with MCR 2.507 and that the judgment of divorce did not comport with the trial court's actual decision. We affirm.

## I. BACKGROUND

On June 25, 2014, plaintiff filed a divorce complaint, alleging that the parties were married in April 2011 in Las Vegas, that the parties had no minor children, that defendant was not pregnant, and that the parties, while no longer cohabitating as husband and wife, still resided together in the marital home.[1] These allegations were admitted by defendant in her answer. In his complaint, plaintiff identified numerous assets – items of personal property, his pension, and his 401(k) – that he claimed "as his premarital, sole and separate property not to be included in

---

[1] The record reflected that the parties were in their 40s and were both gainfully employed.

-1-

the distribution of the marital estate[.]" Plaintiff further alleged in the complaint that the parties had real and personal property, along with liabilities, that needed to be equitably divided.

After the complaint and answer were filed, the parties heavily litigated numerous issues regarding such matters as use or alleged improper use of the marital home, bank accounts, credit cards, and personal property. The proceedings were acrimonious to say the least.[2] A consent order was entered on September 12, 2014, pursuant to which plaintiff received exclusive use and occupancy of the marital home, with defendant being permitted to pick up personal property from the home, which process later gave rise to additional friction and litigation. The parties were unable to resolve or settle their differences on most matters, and a bench trial was scheduled for December 9, 2014. The trial court initially swore in the parties, and the attorneys then discussed the items upon which the parties had ostensibly reached agreement, as well as identifying those issues remaining in dispute and in need of resolution by the trial court.[3] With respect to the Harley, plaintiff's counsel stated, early on, as follows:

> We have agreed that the Harley . . . has an appreciated value during the course of the marriage, a marital value of five thousand six hundred dollars. And that would then be divided in half, and . . . the defendant will be entitled to her one half of that amount of money.[4.]

The trial court proceeded to address the issues remaining in dispute, one by one, allowing the attorneys to state their positions on a given issue, asking questions of counsel relative to their views and arguments, and occasionally peppering the parties with questions pertaining to a specific issue; it was very informal. The trial court would rule on a particular issue, or defer ruling until later, and then move on to the next issue in dispute. The trial court observed, "I've never conducted a trial this way." Plaintiff's counsel responded, "I like it." And defendant's attorney voiced no disapproval. The parties and counsel tussled over real estate, a time-share, vehicles, a boat, debt, various accounts, and miscellaneous personal property, down to the smallest of items, including, as mentioned by the trial court, "[p]ots and pans, utensils, and plates."[5] Numerous times the arguments focused on whether items were separate or premarital property versus marital property, with difficulties arising concerning property the parties had jointly purchased as a couple before they were married. Now and then, the parties conversed directly with each other and sometimes agreed to a particular disposition of property.

---

[2] Amongst the many disputed issues, the parties exchanged accusations of damaging and stealing personal property and all types of nefarious conduct.

[3] There were also a variety of pending motions that were addressed by the trial court.

[4] Neither defendant's attorney nor defendant said anything when this statement was made. There is no dispute that plaintiff had purchased the Harley before the marriage.

[5] At one point, the parties themselves began bickering over a BB gun, each claiming to have won it at a banquet, with the trial court responding, "Oh, you guys, come on."

Despite plaintiff's counsel's statement toward the beginning of the trial about an agreement concerning the Harley, discussion regarding the disposition of the Harley sporadically arose at times during the proceedings. Midway through the trial, the trial court indicated that it was going "to award [plaintiff] his Harley . . . free and clear of any interest from [defendant.]" Later, plaintiff stated that he had purchased the Harley for $27,000. Subsequently, the trial court, the parties, and counsel focused their attention more squarely on the Harley. Plaintiff's attorney noted that the Harley belonged to plaintiff prior to the marriage. Defendant's attorney stated that the balance owing on the Harley when the parties married was $11,400 and that the balance was paid off during the marriage using joint funds. Plaintiff's counsel then chimed in, asserting that the Harley had a purchase price of $17,200, with plaintiff himself immediately interjecting that the Harley was actually purchased for $25,000 and that the $17,200 amount represented the amount of the loan that he had taken out to make the purchase. Plaintiff's attorney, relying on the $17,200 figure and the marriage-date balance of $11,400, maintained that the Harley had equity of $5,800 ($17,200 minus $11,400) at the time of marriage. Counsel for both parties then engaged in the following colloquy:

> *Plaintiff's Attorney.* Eleven four is what it's worth today, with zero outstanding. The difference between fifty-eight hundred and eleven four is fifty-six hundred. And so fifty-six hundred is the marital portion, and she gets half of that.[6]

> *Defense Counsel.* The only problem is, your Honor, I think the court probably knows, Harley[s] . . . really don't appreciate that much. . . . .

We note that no evidence was presented regarding the current value of the Harley, nor was any evidence submitted showing the actual value of the Harley at the time the parties married. Further, although there was no evidence that $11,400 was owed on the Harley at the time of marriage and that said amount was paid off during the marriage – the attorneys' arguments were not evidence and plaintiff and defendant did not actually say anything on the matters, there was no dispute regarding those assertions.[7] The trial court eventually ruled with respect to the Harley, concluding:

---

[6] In plaintiff's trial brief, he similarly stated the following regarding the Harley:

> This is a premarital asset of the [p]laintiff. The purchase price was $17,200. The Harley . . . had a lien against it in the amount of $11,400 at the time of marriage, leaving an equity value of $5,800 at the time of marriage. The current value is $11,400 with no outstanding indebtedness, less the premarital value of $5,800, provides a marital value of $5,600.

[7] Although a bit confusing, plaintiff's attorney had asserted that $11,400 represented the amount owing on the Harley at the time of marriage and that the same dollar figure, $11,400, was the current value of the Harley.

-3-

[B]ased on the testimony, the court is awarding the Harley . . . to the husband, Mr. Rhodes. And he is to pay the wife five thousand two hundred dollars. Just say five thousand two hundred. Let's see, five thousand seven hundred, or half of the value of eleven thousand four hundred.

Both parties had requested an award of attorney fees, and the trial court reached the issue near the end of the proceedings, ruling as follows:

Based on the parties' disparity in income, there wasn't much testimony about it, but it was, at least in Mr. Rhodes' brief, that he earns approximately one thirty a year, and she earns sixty-five thousand a year. Or eighty-five if she works overtime. But the point is, there is a disparity of income. And I am not awarding her spousal support, it wasn't requested, and I'm not awarding it. So therefore, I am awarding her reasonable attorney fees. And denying his request for attorney fees. And you will have to, sir, present a bill to date for your services. Okay? And once I review them I will consider the reasonableness of them.

We note that plaintiff's trial brief stated that he was employed in sales, "earning a base salary of $70,000 per year plus commissions of approximately $60,000 per year for a total compensation average of approximately $130,000 per year."

On matters that the trial court had deferred on earlier, it ultimately rendered a decision, except for some household items remaining on a marital-property list that the parties indicated they should be able to resolve on their own; the court directed that said items of property were "to be divided as agreed by the parties."[8] We note that toward the end of the "trial," the court asked if the parties wished to call any witnesses, and plaintiff's counsel indicated that he "had no intention of calling any witnesses," while defendant's attorney remained silent on the issue. The court concluded the trial by taking some proofs regarding jurisdiction and whether defendant was pregnant, and it then determined that there had been a breakdown of the marital relationship to the extent that the objects of matrimony could no longer be preserved.

The parties could not agree on the language of the judgment of divorce, and a hearing to settle and enter a judgment was conducted on March 6, 2015, which hearing also encompassed defendant's submission of a bill of costs relative to incurred attorney fees that amounted to $12,678. In settling the divorce judgment at the hearing, the trial court discussed the attorney fees, ruling that it was awarding defendant $6,573 in attorney fees after determining that some of the requested fees were inappropriate to award for a variety of reasons.

The judgment of divorce that was entered listed all of the property, real and personal, awarded to each party, along with required payment amounts relative to some of the items,

---

[8] The parties had reached agreement on a great number of items on the list at this point, with the agreed-upon disposition being reflected in the placement of either plaintiff's or defendant's initials next to a particular item on the list. The list set forth values for each item of personal property.

-4-

reflecting the receiving party's monetary and equitable share of a particular item that had been awarded to the other party. Plaintiff was awarded the Harley "free and clear of any right, claim or interest of the [d]efendant." Further, plaintiff was ordered to "pay the sum of $5,700 to the [d]efendant, representing one half of the marital pay off amount of the . . . Harley[.]" With respect to attorney fees, the divorce judgment provided that plaintiff's request for fees was denied, while defendant was awarded $6,573 in attorney fees and costs. Finally, the judgment of divorce provided, in two spots, that "[t]he marital household furniture and furnishings shall be divided pursuant to Exhibit 'A' attached hereto." There is no Exhibit A attached to the divorce judgment. However, in motions and pleadings leading up to the hearing to settle the judgment, the parties attached an Exhibit A, which was the marital-property list referenced above that contained items of personal property upon which the parties had mostly agreed relative to disposition, except for a few items that they were purportedly going to reach agreement upon. Plaintiff appeals as of right, and defendant cross appeals as of right.

## II. ANALYSIS

### A. THE HARLEY

Plaintiff argues that the trial court clearly erred when it awarded defendant $5,700 for her share of the Harley. In *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992), our Supreme Court set forth the appropriate standard of review with respect to the division of marital property in divorce actions:

> To alleviate any possible confusion stemming from our prior cases, we hold here that the appellate standard of review of dispositional rulings is not limited to clear error or to abuse of discretion. The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable. [Citations omitted.]

A trial court has broad discretion in dividing a marital estate. *McDougal v McDougal*, 451 Mich 80, 88; 545 NW2d 357 (1996). The following factors should be considered by the court where relevant when dividing marital property:

> "(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity."
> [*Id.* at 89 (citations omitted).]

It is not feasible, nor desirable, to establish a rigid framework for purposes of applying the relevant factors; there can be no strict mathematical formulations. *Id.* at 88. While the division of property need not be equal, it must be equitable. *Id.*

Plaintiff first contends that the parties had an agreement regarding the Harley, pursuant to which plaintiff would be awarded the Harley and defendant would be awarded $2,800, equaling half of the alleged marital equity ($5,600) in the Harley.[9] Although it appeared at the beginning of the trial that the parties had reached such an agreement, defense counsel seemed to back away from it later in the proceedings. Regardless, even had the parties agreed or stipulated that plaintiff would receive the Harley and defendant would be awarded $2,800, the trial court was not bound by the agreement or stipulation. In *Jones v Jones*, 132 Mich App 497, 500; 347 NW2d 756 (1984), this Court explained that courts are not bound by stipulations reached by the parties, observing:

> Property settlements in divorce cases are both lawful and to be commended. However, this is not to say that because the parties to a divorce action have agreed to a property settlement and proposed it to the court that the court must accept it. In essence, we concur with the trial court's view that the power to enter a divorce judgment rests with the court, and the parties' or counsels' agreement cannot divest the court of its broad discretion to divide the marital estate upon the dissolution of the marriage. [Citation omitted.]

Plaintiff next maintains that the trial court *initially* decided to award the Harley to plaintiff as an offset to defendant being awarded the parties' Lincoln MKZ, absent any payment to defendant for her share in the Harley. A review of the record, however, indicates that the trial court simply stated that it was going to award plaintiff the Harley "free and clear of any interest from her" and award defendant the Lincoln "free and clear from any interest from him." This is exactly how these vehicles were divided under the divorce judgment; ruling that a party is awarded property free and clear of any interest by the other property goes to ownership rights and was not a suggestion that a monetary offset would not be applied.[10] And regardless, even if the trial court's wording is construed as claimed by plaintiff, the court had the prerogative to change its mind and rule as it did later in the trial regarding the Harley.

Plaintiff next argues that by not ordering straight awards to the parties of the Harley and Lincoln, absent plaintiff having to compensate defendant for her share in the Harley, the disposition was effectively inequitable and defendant received a windfall. Defendant testified that the Lincoln, which had been damaged in an accident and had 68,000 miles on it, was only

---

[9] Regarding the equity in the Harley at the point of marriage, plaintiff's attorney, as indicated above, based it on the balance owing on the Harley and its purchase price, which was actually the amount of the original loan and not the purchase price according to plaintiff's testimony. Regardless, the proper method of calculating the Harley's equity at the time of marriage would have involved subtracting the amount owing on the debt, $11,400, from the Harley's *fair market value* at the time, not its purchase price or the amount of the loan.

[10] Defendant was not ordered to pay plaintiff any money to cover his marital share of the Lincoln.

worth $5,000.[11]  And the trial court noted its belief that the Lincoln was not "worth much at all." Further, the trial court awarded plaintiff his 2013 Ford Fusion.  Although the Ford was a company car, the trial court found that marital funds had been used to maintain the vehicle, taking that factor into consideration when awarding defendant the Lincoln.[12]  Given these facts, we are not left with a firm conviction that the trial court's disposition of the Harley and Lincoln was inequitable.  Moreover, plaintiff's argument effectively examines the two vehicles in a vacuum without contemplating all of the other property, real and personal, that was divided by the court.  Assuming that there was an inequity when solely considering the disposition of the Harley and Lincoln, we cannot discern from the record and divorce judgment, and plaintiff makes no effort to show, that this presumed inequity resulted in an *overall inequitable distribution* of property.  Reversal is unwarranted.

Finally, plaintiff contends that the method and computation by which the trial court divided the Harley and awarded defendant $5,700 was not supported by the evidence and that there was no evidence concerning the Harley's value.[13]  We find this argument a bit disingenuous, as plaintiff is attempting to employ his own failure to present evidence showing the value of the Harley – property that was bought and used by plaintiff – to undermine the trial court's ruling.  And plaintiff's attorney had advanced an argument that the Harley had a current value of $11,400.  When the trial court ruled from the bench, it was not clear whether it based the $5,700 award on the use of $11,400 in marital funds to pay off the debt on the Harley or on the $11,400 amount argued by plaintiff's counsel as being the current value of the Harley.  However, the divorce judgment provided that the $5,700 "represent[ed] one half of the *marital pay off amount* of the . . . Harley[.]"  (Emphasis added.)  Accordingly, the trial court, in awarding the Harley to plaintiff, decided to simply compensate defendant by giving her an amount equal to half of the marital funds that had been expended to pay off the Harley balance.  We are not left with a firm conviction that the trial court's determination was inequitable, especially given the problematic nature of the valuation method proffered by plaintiff to calculate defendant's

_____

[11] Plaintiff claimed in his trial brief that the Lincoln had a value of $15,000, but he presented no evidence at trial in support of this contention.  The Lincoln had been paid off during the marriage and there was no existing lien.

[12] In his trial brief, plaintiff indicated that the Ford was owned by his employer.  At trial, plaintiff's counsel stated that plaintiff "pays for it . . . with marital funds."  We are not quite sure what that statement meant, but the trial court apparently construed it as meaning that plaintiff used marital funds to maintain the vehicle.  Of course, if plaintiff's employer owned the Ford, the divorce judgment could not impact the employer's ownership rights; it appears that the award of the vehicle to plaintiff was more conceptual in nature, so as to fully address any type of interests in the car as between the parties themselves.

[13] In general, a trial court must make specific findings in regard to the value of marital property that is being awarded in a judgment if the value is in dispute, and a court commits clear error when it fails to place a value on disputed property.  *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003).

equitable share (see footnote 9 above).[14]  To the extent that plaintiff is arguing that there was no evidence that the balance owing and paid off during the marriage relative to the Harley was $11,400, the argument is waived, considering that it was plaintiff who advanced this dollar amount at trial, which defendant never challenged.  See *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) (acquiescence evidenced an agreement to waive a secured right and a party cannot complain on appeal when its own unequivocal conduct established waiver, which is in keeping with the longstanding rule against harboring error as an appellate parachute).  The trial court's ruling regarding the disposition of the Harley is affirmed.

## B.  ATTORNEY FEES

Plaintiff argues that the trial court erred in awarding defendant attorney fees, where defendant failed to show the requisite need, i.e., that she was unable to bear the expense of the litigation.  Plaintiff maintains that the trial court's basis to award attorney fees, simply a disparity in income, did not suffice for purposes of MCR 3.206(C).

We review a trial court's decision whether to award attorney fees in a divorce action for an abuse of discretion.  *Woodington v Shokoohi*, 288 Mich App 352, 369; 792 NW2d 63 (2010). Any related factual findings by the trial court are reviewed for clear error.  *Id.*  Under MCR 3.206(C), a party requesting attorney fees in a divorce action has the burden of showing sufficient facts to justify an award.  *Id*. at 370.[15]  The attorney fees must be necessary for the party to prosecute or defend the action.  *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010); see also MCL 552.13(1) (providing that a court in divorce litigation may require a party to "pay any sums necessary to enable the adverse party to carry on or defend the action").  This Court has held that where a party is required to rely on assets for support, the party should not be required to invade those assets to pay for attorney fees.  *Woodington,* 288 Mich App at 370.  A party may demonstrate an inability to pay attorney fees by showing that he or she has

---

[14] Even had the trial court awarded defendant the $5,700 on the basis that it constituted half of the alleged $11,400 current value of the Harley, we would still find no error or basis to reverse.

[15] MCR 3.206(C) provides, in relevant part:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding . . . .

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

yearly income less than the amount owed in attorney fees. *Myland,* 290 Mich App at 702. Ultimately, however, the particular factual circumstances of the case govern whether there is an ability to pay for attorney fees. *Loutts v Loutts (After Remand),* 309 Mich App 203, 217-218; 871 NW2d 298 (2015). "This requires a trial court to give 'special consideration to the specific financial situations of the parties and the equities involved.' " *Id.* at 218, quoting *Myland,* 290 Mich App at 703.

We initially note that the trial court only awarded defendant about half of the attorney fees that she had requested. The trial court indicated that it was awarding defendant attorney fees based on the disparity in income, which was substantial, ranging from $45,000 to $65,000, depending on whether defendant worked overtime.[16] And, aside from the disparity in income, the trial court also observed that defendant was not going to receive any spousal support. We also point out that the marital home was awarded to plaintiff.[17] While the trial court's reasoning lacked some clarity, we view the trial court's ruling as effectively and ultimately being based on "need," consistent with the requirements of MCR 3.206(C)(2)(a), and, under the circumstances, we find no clear error or abuse of discretion relative to the court's ruling.

In a footnote, plaintiff maintains that the trial court abused its discretion in failing to award plaintiff any attorney fees under MCR 3.206(C)(2)(b) ("the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply"). The record does not support an award of attorney fees to plaintiff under MCR 3.206(C)(2)(b), nor do we conclude that the trial court abused its discretion in denying plaintiff's request for attorney fees. Plaintiff complains that the trial court did not allow him to present testimony and evidence in support of his request for attorney fees. The record belies plaintiff's assertion. As indicated earlier, when the court asked the attorneys whether they wished to call any witnesses, plaintiff's counsel stated that he "had no intention of calling any witnesses." Reversal is unwarranted.

## C. CONDUCT OF TRIAL

On cross-appeal, defendant argues that the trial court committed clear legal error in failing to conduct the trial pursuant to MCR 2.507, which entails the calling and swearing-in of witnesses and the introduction of exhibits.[18] Although a trial court has wide discretion and power in matters of trial conduct, *Lansing v Hartsuff,* 213 Mich App 338, 349; 539 NW2d 781 (1995); MRE 611, we do question and cannot condone the manner in which the trial was conducted here, although given the circumstances and the parties' litigiousness over the minutest

---

[16] The evidence of income was greatly lacking at trial; however, the parties do not dispute the income amounts set forth in this opinion.

[17] There was no monetary offset for defendant's interest, as apparently there was either little, no, or negative equity in the home.

[18] MCR 2.507 sets forth the normal course of a trial, including opening statements, the introduction of evidence, the examination and cross-examination of witnesses, closing arguments, and other matters attendant to trials.

of issues, the approach was, if anything, practical. That said, the trial court allowed the attorneys to fully present and voice their positions and arguments, it swore in the parties, such that their statements were made under oath, it permitted the parties to speak and testify freely, it did not prohibit counsel from seeking to introduce exhibits, and the court gave the attorneys the opportunity to call witnesses for examination if they desired. There simply was no prejudice to defendant. See MCR 2.613(A) (harmless error applies to "an error or defect in anything done or omitted by the court"). Furthermore, at no point did defendant or her attorney indicate or even remotely suggest that they objected to the process employed by the trial court; rather, they fully went along with the process and cannot now complain that it was defective. *Marshall Lasser*, 252 Mich App at 109 (discussing waiver and rule against harboring an appellate parachute). Reversal is unwarranted.

### D. COMPORTMENT OF JUDGMENT OF DIVORCE

On cross-appeal, defendant further argues that the divorce judgment did not comport with the trial court's ruling from the bench at the trial as mandated by MCR 2.602(B)(2), which provides that a "court shall sign [a] judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision." Defendant's argument on this issue is rambling and difficult to decipher, with defendant quoting at length various objections made at the hearing to settle the judgment, absent any clear indication that she is renewing those objections in this appeal. Most of defendant's arguments made below simply did not pertain to whether the judgment submitted by plaintiff comported with the court's rulings. Instead, they were directed at how plaintiff formatted and structured the judgment or simply challenged a ruling.[19] Moreover, the trial court determined that the provisions of the judgment comported with its rulings and we find no basis to upset that determination. We do, however, need to speak to one matter. Defendant argues as follows:

> There is nothing in the [divorce judgment] which provides [that] the [p]arties shall work out the further division of the marital property themselves by getting together and dividing up the balance of the household furniture and furnishings to their satisfaction, although the same is on the record of this Divorce Action.

As noted earlier in this opinion, the trial court did indeed make this ruling at the trial, and the issue is tied to Exhibit A that was purportedly attached to the divorce judgment, but is not so attached in the record before us, although Exhibit A was attached to various pleadings and motions. In two spots in the divorce judgment, it was provided that "[t]he marital household

---

[19] For example, defendant complained that the divorce judgment had a section devoted to listing the property awarded to plaintiff, while showing the amount of money owed to defendant by plaintiff relative to her share of a particular piece of property in the section devoted to listing the property awarded to defendant. Defense counsel wanted them grouped together, e.g., the award of the Harley to plaintiff and the award of $5,700 to defendant as her equitable share of the Harley should have been together and not in two separate sections of the judgment. This argument has nothing to do with whether the judgment comported with the court's ruling.

furniture and furnishings shall be divided pursuant to Exhibit 'A' attached hereto." This language was plainly intended to address and cover the trial court's ruling regarding the further distribution of property as worked out by the parties. And defendant does not identify any item on that list, Exhibit A, that remains in dispute. Accordingly, reversal is unwarranted.

### III. CONCLUSION

We affirm the trial court's rulings regarding the disposition of the Harley, the award of attorney fees to defendant, and the denial of plaintiff's request for attorney fees. Further, we reject defendant's arguments that reversal is warranted with respect to the unorthodox trial process that took place and to whether the divorce judgment comported with the trial court's rulings at the trial.

Affirmed. We decline to award taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause