# STATE OF MICHIGAN

# COURT OF APPEALS

REGINA M. BERGH,

       Plaintiff-Appellee,

v

CARL E. BERGH,

       Defendant-Appellant.

UNPUBLISHED
October 13, 2016

No. 329152
Marquette Circuit Court
LC No. 15-053223-DO

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

       Plaintiff and defendant, now both in their early 50s, married in August 1981, and they have two adult children, a son and a daughter, born of the marriage. In February 2015, plaintiff filed for divorce after 33 years of marriage. Defendant had been employed as a corrections officer with the Michigan Department of Corrections (MDOC) for many years and was retired at the time of the divorce litigation. Plaintiff is a certified public accountant (CPA) and, during the divorce proceedings, was employed as the Chief Financial Officer (CFO) for Upper Peninsula Health Plan (UPHP), earning a six-figure income. The parties were able to reach a settlement, for the most part, with respect to the division of the marital property and marriage-related debts. The focus of the one-day trial was on spousal support, not in regard to whether defendant was entitled to spousal support, but as to the amount of monthly support and its duration. The trial court awarded defendant modifiable spousal support of $2,000 per month for six years. Defendant challenges that award on appeal, arguing that the surrounding circumstances dictated permanent spousal support and in a higher monthly amount.[1] The trial court also ruled that a promise by the parties to their daughter years earlier to pay for her college education was to be honored, as requested by plaintiff. And the court ordered that the daughter's college loan debt, approximately $30,000 for which she alone was legally obligated to pay, be paid in full by the parties from the proceeds of the sale of the marital home. Defendant challenges that ruling on appeal, maintaining that the court lacked jurisdiction to enter such an order. After careful consideration of the appellate arguments, we affirm the award of spousal support and let stand

---

[1] When defendant speaks of "permanent" spousal support, he makes clear that he means support until he can start collecting social security benefits in about ten years; defendant is not seeking spousal support for the remainder of his life.

that part of the judgment of divorce compelling payment of the daughter's college loan debt from home-sale proceeds, as defendant fails to show that the matter has not been rendered moot.

## I. THE TRIAL COURT'S RULING AND JUDGMENT OF DIVORCE

At the close of the proofs, the trial court proceeded to make its findings with respect to spousal support.[2] The court noted that the case plainly called for an award of spousal support and that it was the amount and duration of support that needed to be resolved. The trial court found that the parties had been in a lengthy, committed marriage, that during the marriage the parties had worked hard and supported each other, that the parties had jointly contributed to the marital estate, that "the plaintiff's income far exceeded the defendant's by close to $100,000 a year[,]" that plaintiff has the ability to pay spousal support, and that there was "need of some support," despite little testimony regarding defendant's budget, nor presentation of a cost-of-living projection. With respect to defendant's ability to work and earning capacity, the trial court noted that there were some limits, but this included, in part, defendant's "lack of interest," and that there was "clear evidence of some longstanding psychiatric issues[,]" although not to the point of being "a total barrier to employment." The trial court found that there was evidence indicating that defendant has "the ability to do some types of work" and "to earn income[,]" but clearly not in an amount comparable to that earned by plaintiff.[3] The trial court observed that it was not uncommon for MDOC retirees to engage in some work to earn a little income. The court stated that it would issue a short written opinion incorporating and supplementing its findings relative to spousal support and setting the amount to be paid and its duration.

On the subject of the college loan debt incurred by the parties' daughter, the trial court indicated that plaintiff had advocated that the parties pay off the loan balance using the proceeds from the sale of the marital home. The trial court stated that it was "satisfied from the testimony that the parties did have an agreement, albeit reluctant on the defendant's part, to pay for the daughter's education, and so that is a joint debt." The court then concluded that the parties' credit card debt and the college loan debt "should be satisfied from proceeds from the sale of the marital home[.]"

In the promised written opinion that was entered shortly after the bench trial ended, the trial court ruled as follows:

> For the reasons stated on the record, the Court concludes that a spousal support award is appropriate. Both during the marriage and at the present time, the Plaintiff's earning capacity far exceeds the Defendant's. Since the Defendant's retirement from employment with the [MDOC], he has not made any effort to find employment, though it appears he has the ability to work in some

---

[2] We shall discuss the pertinent trial testimony in the analysis section of this opinion.

[3] The trial court acknowledged defendant's current pension income. The court also discounted plaintiff's suggestion that defendant could apply for social security disability benefits. We shall elaborate on these matters later.

capacity. Even with working at full capacity, however, he would not earn an income comparable to that of the Plaintiff.

In consideration of all relevant spousal support factors, the Court orders the Plaintiff to pay spousal support to the Defendant in the amount of $2,000 per month for a period of six (6) years. The award is reviewable as to amount and duration on a showing that there has been a material change in circumstances.

In the written opinion, the trial court also ordered that, for purposes of equalizing the personal property distribution where defendant was awarded personal property with a higher total value, the offset was to be paid to plaintiff out of proceeds from the sale of the marital home, not the retirement accounts.[4]

A judgment of divorce was subsequently entered. The divorce judgment incorporated by reference a uniform spousal support order, which provided that plaintiff is to pay defendant $2,000 per month in spousal support for a period of 72 months, subject to early termination on the basis of defendant's remarriage or plaintiff's death and subject to modification "based on a showing of a material change in circumstances." The judgment of divorce further directed the sale of the marital home, with the proceeds to be used to pay the mortgage balance, "the student loan in [the daughter's] name . . . in full[,]" and the credit card debt. Additionally, plaintiff was deemed entitled to $17,816 from the proceeds of the sale of the marital home, "representing the disparity in the division of personal property[,]"[5] and any "remaining proceeds [are to] be equally divided between the parties." With respect to the property settlement, the judgment of divorce awarded plaintiff: all of the personal property currently in her possession; the 2013 Chevy Impala, along with the associated debt; one-half of the balance in savings, checking, and other depository accounts held jointly by the parties; her IRA, 401(k), and Roth IRA, less

---

[4] In a joint trial statement regarding assets and liabilities, the parties agreed with respect to the valuation of the marital property, except for a $200 difference relative to a 2002 pickup truck and a $200 difference concerning a small aluminum boat. The marital home was valued at $268,000 on the basis of an appraisal, with a mortgage balance of $105,899, leaving $162,101 in equity. The values of the following motor and recreational vehicles take into consideration any outstanding loan balances on the vehicles (equity values). The 2002 pickup truck was valued at $1,000 by plaintiff and $1,200 by defendant. A 2013 Chevy Impala had a value of $1,901, a 2003 Chevy Impala was valued at $1,000, and a 2015 GMC extended-cab pickup truck had a value of $4,000. A 2008 Lund boat, motor, and trailer were valued at $14,167. The aluminum boat mentioned above was valued at $750 by plaintiff and $550 by defendant. A snowmobile apparently had no value, as no value was provided. The parties had multiple savings and checking accounts at a couple of credit unions, which had a total balance of $7,508. The parties had multiple retirement accounts and pensions that were valued at nearly $1 million. Finally, the joint trial statement indicated that the college loan debt of the parties' adult daughter amounted to $30,329 and that the parties also had about $28,000 in credit card debt.

[5] At the end of the divorce trial, plaintiff contended that the agreed-upon division of the parties' vehicles favored defendant by about $17,000 in regard to the value of the vehicles.

$21,751 that is to be transferred to defendant from the IRA in order to equalize the distribution of retirement accounts; and two pensions, "less a 50% marital interest awarded" to defendant pursuant to qualified domestic relations orders (QDROs). Under the divorce judgment, defendant was awarded: the 2002 pickup truck, 2003 Chevy Impala, and the 2015 GMC pickup truck; the 2008 Lund boat, motor, and trailer, and the associated debt; the aluminum boat and snowmobile; all of the personal property currently in his possession; one-half of the balance in jointly-held bank accounts; his 401(k), "457 deferred comp," and his MDOC pension, subject to plaintiff's continuing right to survivor benefits; $21,751 from plaintiff's IRA; "and a 50% interest in" in plaintiff's two pensions pursuant to QDROs.

Defendant appeals as of right.

## II. ANALYSIS

### A. SPOUSAL SUPPORT

Defendant argues that the trial court erred in only providing him with spousal support for six years and in the amount of $2,000 per month. Defendant maintains that a spousal support award of $3,000 per month until he qualifies for social security in about ten years would be just and reasonable given defendant's age, the length of the marriage, defendant's poor mental and physical health, his lack of ability to maintain steady employment, the unlikeliness of him finding decent employment, and plaintiff's far superior wages and earning power. We review a trial court's award of spousal support for an abuse of discretion. *Loutts v Loutts,* 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi,* 288 Mich App 352, 355; 792 NW2d 63 (2010). Any findings of fact relating to the award are reviewed for clear error. *Id.* A finding of fact "is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id.* Deference is given to a trial court's findings of fact that are based on the credibility of witnesses. *Id.*

MCL 552.23(1) contemplates a case-by-case approach in determining an award of spousal support. *Loutts,* 298 Mich App at 29-30.[6] "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal

_____

[6] MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . ., the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

support must be based on what is just and reasonable considering the circumstances of the case." *Id.* at 32. A court should consider all relevant factors in determining an appropriate award of spousal support, including:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington,* 288 Mich App at 356 (citation omitted).]

Rehabilitative spousal support is intended to allow a party to assimilate into the work force and establish economic self-sufficiency. See *Friend v Friend,* 486 Mich 1035; 783 NW2d 122 (2010). "Spousal support does not follow a strict formula." *Loutts,* 298 Mich App at 30.

With respect to the spousal support factors, the parties were married for 33 years, plaintiff was 52 years old and defendant was 53 at the time of trial, neither party was legally responsible for the support of others, the parties both contributed significantly to the joint estate during the lengthy marriage, there was no issue concerning cohabitation, and fault for the divorce did not play a role in the trial court's determination of spousal support.

With respect to the past relations of the parties and the history of the marriage, the parties married at a young age, at which time defendant was working in a grocery store, and their first child was born soon thereafter. Defendant obtained a welder's certificate; the parties then moved to Rhode Island, where defendant had landed a job; they returned to Michigan after about a year when defendant found a welding position here; defendant worked as a welder for a couple of Upper Peninsula companies for a short period; and defendant was later hired by the MDOC as a corrections officer, where he remained employed for over 27 years. During the time that defendant worked as a welder and corrections officer, plaintiff cared for the parties' children, worked some part-time jobs, went to college, obtained an accounting degree, became a CPA, worked in public accounting for a period, and then found employment in private accounting, including her current job as CFO for UPHP. As noted by the trial court, the parties had a lengthy, committed marriage, which began to seriously unravel upon defendant's retirement from the MDOC in March 2013. Plaintiff testified that defendant became isolated, did not eat right, would not exercise, laid on the couch and watched TV most of the day, and regularly drank alcohol, all of which was not envisioned by either party prior to defendant's retirement. Plaintiff asserted that she wrote letters and otherwise communicated to defendant about her concerns and the changes that she wanted to see in his behavior, and the parties did engage in some counseling, but to no avail. Plaintiff testified that she could no longer tolerate the situation and moved out of the marital home and into an apartment. Defendant, who did not want the divorce and referred to the dates of the trial and plaintiff's leaving as the two worst days of his life, essentially agreed with plaintiff's characterization of his post-retirement behavior and disposition. He did claim to have regularly exercised with a personal trainer at a gym for about

three months in 2014. When plaintiff left, defendant remained in the marital home, which is where he was still residing at the time of the divorce trial.

With respect to the ability of the parties to work and their health, plaintiff was generally in good health and had the ability to work in her field.[7] Defendant had a herniated disc and laser surgery on his back approximately 12 years earlier, around the same time as plaintiff's back surgery, but his back gradually deteriorated over the years, and he injured it and his leg in 2014 when lifting trusses while helping the parties' son build a home in Montana. A day after his return to Michigan, defendant ruptured his back when getting up from a couch at his sister's home, resulting in an emergency room visit, subsequent back surgery, and physical therapy. Defendant testified that he now felt okay in general, although his right knee buckles on him at times. He indicated that he had started mowing the lawn at his sister's daycare center and that the work might lead to cleaning and maintenance jobs at the daycare center. Defendant testified that he is limited in regard to lifting and moving objects, and he did not believe that he could work full-time absent taking hydrocodone. Defendant noted that he has taken prescription painkillers off and on over the years to address back and leg problems.[8] He also testified that he had not prepared a resume, that he was "going to obtain a job," that there was a pretty good likelihood of him landing a job if he tried, and that he had not yet applied for any jobs since plaintiff left the marriage. Defendant stated that it would be fair to impute $10,000 in annual income to him.

Plaintiff testified that she was unaware of any physical restrictions that defendant was under, and she believed that defendant was capable of employment. She also observed that defendant could find a job that did not require heavy lifting, and she suggested employment in security, given defendant's MDOC background, or a job at Walmart. Plaintiff asserted that defendant had talked about doing some welding work, which he had done prior to taking the job with the MDOC, or training dogs. Defendant testified that within the past 10 years or so, he had been diagnosed with post-traumatic stress disorder (PTSD), associated with his job as a corrections officer,[9] major depressive disorder, anxiety attacks, and obsessive-compulsive disorder (OCD). Defendant takes a variety of prescription medicines to address these mental health issues and sees a therapist. Plaintiff testified that defendant had been able to successfully maintain his employment with the MDOC despite the mental health diagnoses. There was some discussion about the prospect of defendant applying for social security disability benefits, which defendant indicated would amount to $2,012 per month. Defendant stated, however, that he would rather work, part-time, than collect disability pay, assuming he qualified, because of the stigma associated with receiving disability benefits.

---

[7] Plaintiff did have a herniated disc and successful laser surgery on her back about 12 years ago.

[8] Defendant testified in regard to a thyroid problem that had wreaked havoc with his health, but that was corrected with medication and is no longer an issue.

[9] Defendant testified that he had been assaulted by inmates "numerous times" during his years as a corrections officer and was once stabbed in the arm with a broken piece of mirror.

With respect to the parties' present financial situation, plaintiff testified that she was employed as CFO at UPHP, where she had worked for a couple of years, that she had an annual salary of approximately $151,000, that she grossed $5,807 per two-week pay period, and that about $3,400 in pay was deposited into her accounts every two weeks, reflecting reductions due to taxes, 401(k) contributions, and other costs. Defendant had begun receiving his MDOC pension upon retirement. He has a gross monthly benefit of $2,651 or about $32,000 annually, netting defendant approximately $1,900 per month.[10] Defendant's pension benefit will increase by $300 annually. Plaintiff testified that defendant could currently access his 457 deferred compensation retirement plan without a tax penalty. According to the joint trial statement, defendant's 457 plan was valued at $140,086. Plaintiff indicated that she had out-earned defendant for the last 20 years of the marriage. She also testified that she could not begin drawing on her pensions until she turned 65 years old.

With respect to the source and the amount of property awarded to the parties, defendant was awarded some motor and recreational vehicles that were not of significant value, all of the personal property in his possession, of which we do not know the value, and one-half of the $7,508 balance in the parties' credit union accounts. He was also awarded half of the proceeds from the future sale of the marital home, which had $162,101 in equity, after various payments are first made with the proceeds. In supplemental briefing ordered by the panel, the parties indicate that the marital home was sold during the pendency of the appeal for $275,000, with the parties equally sharing $70,935. Defendant will additionally receive substantial amounts with respect to retirement plans and pensions, although, for the most part, it will be several years before this money begins to flow to defendant.

With respect to plaintiff's ability to pay spousal support and defendant's needs, plaintiff clearly has the financial ability to pay substantial spousal support, and she testified that she plans to keep working. But she also has expenses of her own to cover, including an apartment that costs $830 a month in rent, $50 in monthly utility bills, and a $350 monthly car payment. Further, defendant testified that plaintiff and the parties' daughter had health insurance under his pension that would be ending. Despite being asked to prepare a budget, defendant testified that he had no idea what his living costs and expenses would be following the divorce, where he was still living in the marital home and plaintiff was still taking care of paying the bills, including the $2,600 monthly mortgage. Defendant was challenged with regard to the need for him to recently purchase the $38,000 GMC pickup truck, which has a monthly payment of $633. Defendant simply claimed that he needed a new vehicle.

Keeping in mind our recitation of the facts in relation to the spousal support factors, we shall now address defendant's specific arguments. Defendant contends that his physical and mental health problems are such that "a part-time job with significant flexibility is realistically the best that can be hoped for" and that his limited work at his sister's daycare center "is likely the extent of employment he will be able to secure." The record does not reflect that defendant's mental health struggles are a barrier to employment, especially where he worked as a corrections officer for many years despite his diagnoses. With respect to defendant's physical health, he has

---

[10] Defendant testified that he chose to retire from the MDOC on the very first date of eligibility.

been mowing the lawn at the daycare center, and he testified that his back and leg have generally been okay after recuperation from the latest back surgery, although he claims being limited in regard to lifting and moving objects. Regardless, defendant is not restricted to finding employment that demands physical strength or exertion. The problem here, as recognized by the trial court and acknowledged by defendant himself, is that defendant is not even making an attempt at finding employment, part or full time, aside from the arrangement with his sister at her daycare center. Defendant testified that there was a pretty good likelihood of him finding a job if he made the effort. And even assuming that part-time work is all that defendant can reasonably engage in given his physical and mental health, it does not warrant reversal of the spousal support award that, in our view, is financially just and reasonable.

Defendant next argues that his age is a barrier to finding gainful employment. Defendant was only 53 years old at the time of trial, and he presented no evidence showing, or from which one could reasonably infer, that his age was precluding him from finding employment. Again, defendant has not made the effort to search and apply for a job, so he is in no posture to complain about his age being an impediment to employment.

Finally, defendant maintains that the spousal support award is not just and reasonable because it fails to appreciate plaintiff's large salary, the wide disparity in the parties' incomes, and the fact that defendant will likely be forced to sell off the property awarded to him and to use up any proceeds from a sale of the marital home to simply meet his daily living needs. Although plaintiff receives a generous salary, defendant has certainly not been left impoverished by the divorce. He has a $32,000 annual pension that he currently receives, on top of which he will receive $24,000 in annual spousal support for six years, along with any monies made at the daycare center. Further, defendant received around $35,000 from the sale of the marital home, which can be used for new living arrangements. Moreover, we cannot even ascertain defendant's daily living costs or prospective costs, considering that he made no attempt to calculate those expenses. Additionally, we have difficulty accepting defendant's concern about having sufficient resources to cover his daily living needs, where he purchased a $38,000 truck that has a $633 monthly payment.

In sum, on this record, we discern no clear error with regard to any of the trial court's underlying factual findings, nor did the court abuse its discretion in ruling that six years of spousal support at a rate of $2,000 per month was just and reasonable given the circumstances of the case.

## B. FAMILY COURT JURISDICTION – CHILD'S COLLEGE LOAN DEBT

Defendant argues that the trial court lacked jurisdiction to order payment of the college loan balance from the proceeds of the sale of the marital home. "A claim that the lower court lacks jurisdiction is a question of law, which this Court reviews de novo." *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). Our Supreme Court has long recognized that the jurisdiction of a divorce court is strictly statutory and limited to determining the spouses' rights and obligations, to the exclusion of third parties. *Estes v Titus*, 481 Mich 573, 582-583; 751 NW2d 493 (2008).

In this panel's order, we directed defendant to submit a supplemental brief "stating whether the house has been sold, setting forth the circumstances surrounding the sale of the

marital home, if indeed it was sold, and indicating the status of the proceeds from the sale relative to payment of the college loan debt." *Bergh v Bergh*, unpublished order of the Court of Appeals, entered September 7, 2016 (Docket No. 329152). We also ordered defendant to brief whether the jurisdictional issue would be moot if the college loan was paid off upon a sale of the home. *Id.* Plaintiff was given an opportunity to file a response brief. *Id.* As indicated earlier, the house was indeed sold, bringing in $275,000, of which $35,036 was disbursed directly to Navient Loan Servicing in full satisfaction of the daughter's college loan debt. There was no stay of the divorce judgment and funds were not escrowed at the closing. Defendant does not cite any authority nor provide any legal analysis regarding the doctrine of mootness. He simply contends that the appeal should not be affected by the fact that the loan debt was paid, claiming also that plaintiff, having sufficient assets from the divorce as well as a very high income, should be made to pay defendant half of the monies that went to cover the loan debt.

"As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id.*; see also *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003) (when a subsequent event makes it impossible for this Court to fashion a remedy on an issue, the issue is rendered moot). "[T]his Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), overruled in part on other grounds *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463; 719 NW2d 19 (2006).

Apparently, defendant is claiming that the issue is not moot because if the court lacked jurisdiction, an available remedy would be to order plaintiff to pay defendant half of the money that went to the lender. We find this argument illogical, as plaintiff did not receive the funds in question; she also gave up part of the proceeds from the sale of the marital home to pay for her daughter's schooling. This would not be a proper cure for any assumed jurisdictional defect, considering that the defect would remain and that plaintiff had only agreed to a sharing of the financial burden associated with the college loan debt. The only sound remedy would entail undoing the payment to the lender and forcing the lender to return the money to the parties. However, defendant has not advanced any argument suggesting that such a remedy could legally be ordered by the trial court or that a ruling by us vacating the divorce judgment's provision requiring payment of the debt could serve as a mechanism for defendant to recover the funds from the lender in a separate suit. Defendant has failed to submit a cogent argument showing that the issue has not been rendered moot by the sale and disbursement to the lender. Perhaps such an argument exists, but it has not been presented to us. Thus, we decline to rule on the substantive issue regarding whether the trial court lacked jurisdiction to compel the payment.

## III. CONCLUSION

The trial court did not err in awarding defendant spousal support in the amount of $2,000 per month for a period of six years. With respect to the jurisdictional issue concerning the order compelling payment of the college loan debt, we conclude, on contemplation of the argument presented by defendant, that the issue is moot.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.


/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause